[No. H036177. Sixth Dist. Feb. 10, 2012.]

In re the Marriage of STEVEN C. THORNE and LAURA L. RACCINA.
STEVEN C. THORNE, Appellant, v.
LAURA L. RACCINA, Respondent.

## COUNSEL

Steven C. Thorne, in pro. per., for Appellant.

Syda Kosofsky for Respondent.

## OPINION

**PREMO, Acting P. J.**—Steven C. Thorne and Laura L. Raccina entered into a stipulated marital dissolution judgment in 1999 under which Laura[1] agreed to accept 16 percent of Steven's military retired pay starting in 2008 based on his rank and pay level at the time of the judgment. In 2010, Laura sought to set aside the judgment because she learned that courts apply the "time rule"[2] for apportioning a pension's community and separate property interests. The trial court found that the parties' contractual intention was to enter into an

---

[1] " 'As is customary in family law cases, we will refer to the parties by their given names for purposes of clarity and not out of disrespect.' " (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 817, fn. 1 [79 Cal.Rptr.3d 588].)

[2] Under the "time rule," "the community property interest in retirement benefits is the percentage representing the fraction whose numerator is the employee spouse's length of service during marriage before separation . . . and whose denominator is the employee spouse's length of service in total . . . ; the separate property interest is the percentage representing the remainder of 100 percent *minus* the community property interest percentage." (*In re Marriage of Lehman* (1998) 18 Cal.4th 169, 176 [74 Cal.Rptr.2d 825, 955 P.2d 451].)

agreement that complied with California law and held that the division of the pension was contrary to law. It therefore modified the judgment to divide Steven's pension according to the "time rule." On Steven's appeal, we conclude that the trial court erred and reject Laura's alternative arguments to uphold the modification, which urge that the pension is a partially omitted asset and extrinsic mistake justifies the modification. We therefore reverse the order granting Laura's set-aside motion and direct the trial court to deny the motion.

## BACKGROUND

The parties married in 1993 and separated in 1999. They sought the assistance of the judge advocate general (JAG) officer in their efforts to draft a marital settlement agreement (MSA). Using information from the JAG, Laura typed a marital separation/settlement agreement. Steven offered modifications. The parties negotiated and then signed a final marital separation/settlement agreement. On June 24, 1999, Steven obtained in propria persona an uncontested judgment of dissolution by declaration (Fam. Code, § 2336) to which was attached the agreement.

The judgment/agreement included the following provisions pertaining to Steven's pension: "The parties hereby agree that the nonmilitary spouse is awarded 16% of the military member's retired pay as her separate property, based upon the military member's rank and pay level at the time this agreement is executed. One half of this amount shall be provided on the 1st and 15th of each month starting June 2008. [¶] Should Husband not be entitled to military retirement pay, due to his own actions, an equivalent amount shall be provided based upon the military member's rank and pay level at the time this agreement is executed. One half of this amount shall be provided on the 1st and 15th of each month starting June 2008. [¶] Should Husband not be entitled to military retirement pay, through no fault of his own, 16% of any settlement moneys shall be provided to Wife. [¶] If non-military spouse remarries then the entitlement to the retirement portion is forfeited."

The judgment/agreement also included the following provisions: "Both husband and wife warrant that they have made no promise, agreement, or understanding, except as set forth above, which was relied upon as an inducement to enter into this agreement. [¶] Both parties acknowledge their right to consult with counsel, of the availability of free legal counsel if they could not afford to obtain counsel, and of the desirability of consulting with counsel before executing this agreement because it affects important personal and financial rights. Each party has read and fully understands each and every provision of this agreement. . . . [¶] IN WITNESS WHEREOF, Husband and

Wife hereto affix their signatures, both thereby acknowledge the free and voluntary nature of the decision to enter into this agreement. These signatures also acknowledge that Husband and Wife were aware of their right to seek and be advised by an independent attorney in the preparation and review of this agreement."

The judgment/agreement did not reserve jurisdiction over any issue.

On April 8, 2010, Laura, now represented by counsel, filed a motion to modify or set aside the judgment. She specifically sought the following relief: "That Paragraph 5 of the Marital Settlement Agreement attached to the Judgment and made a part thereof relating to Military Retirement Pay, be set-aside or amended to comply with California Law." Her declaration asserted the following: "At the time we entered into the Marital Settlement Agreement I was not represented by counsel and the Marital Settlement Agreement was prepared by [Steven's] Justice Advocate General (JAG) counsel through the Military. I was led to believe by the JAG representative that what was being proposed to me was in fact law, which I now understand is not correct." Her points and authorities asserted that she was entitled to a modification under a mistake-of-law theory because her "community property rights to [Steven's] military retirement was [*sic*] not correctly adjudicated, the MSA that was incorporated into the judgment incorrectly awarded her with less than her community share of the military pension according to California laws. In addition, it was a serious error that the MSA prepared by the JAG office created an unfair advantage for the military spouse by stating that [Laura's] property rights to the military spouse's retirement benefits ended upon [Laura's] remarriage." She continued that "Under California Family law, the community property interest in retirement benefits is [the 'time rule']." She concluded that she was "entitled to her one-half community share of [Steven's] disposable retirement pay as of the date of his retirement from the military. The court should set-aside the portion of the judgment that divides the military pension so that it can be modified according to California law."

Steven filed a responsive declaration in propria persona that pointed out that "Neither [Steven] nor [Laura] [was] represented by [the JAG]," the JAG "had no stake in providing any advantage to either side," and the JAG's "role is to provide information and awareness, not counsel." He added that the JAG provided a handout guide to give "an overview of the legal process, which will help you do your own uncontested dissolution or separation." He offered that Laura drafted the agreement from a JAG template. He essentially argued that the judgment was unambiguous in defining Laura's rights in his pension: "[Laura] was not awarded a percentage of [Steven's] retired pay, but in . . . fact a percentage of a fixed dollar amount, based on the grade and years of

service at the time of Judgment." And he argued that the judgment was final and not subject to attack for mistake of law under Code of Civil Procedure section 473, subdivision (b) (relief must be sought within six months of judgment) or Family Code section 2122, subdivision (e) (relief must be sought from stipulated or uncontested judgments within one year of judgment). At the hearing in response to the trial court's question, he stated that he had not been aware of the "time rule."

Laura filed a reply in which she asked the trial court "to provide for the error in this judgment to be ruled as an omitted asset, since the pension division was not according to the time rule and did not provide for my community share of the military pay according to California law and rule that the section that terminates my property rights upon remarriage is contrary to both federal and California law and cannot be enforced." She added that her "belief was that the JAG attorney was supposed to be an impartial party specifically there to preclude this violation of the law" but that he "was not 'providing information and awareness' when he failed to mention to us that the document did not comply with both [federal] and California Family Law. I would have never signed any of the documents if he had informed me the MSA did not comply with the law." She argued, without specifics, that the trial court could grant relief under Family Code section 2122, subdivision (a), because she was kept in ignorance or fraudulently prevented from fully participating in the proceeding (relief must be sought within one year of discovery of the fraud), or under Family Code section 2556 (omitted asset) because the retirement benefit was a partially omitted asset "in that the true value of the asset was not disclosed nor divided according to established California community property laws." Her theory was "that by not providing [Laura] her total community property share of the military retirement, the asset has been partially omitted and, therefore, the Court has jurisdiction to set aside that part that is incorrect and provide a fair and equitable judgment." She claimed that "the Court has a duty to make sure that there are not judgements [sic] or orders that are contrary to the law and, therefore, this was contrary to the law and void on its face as a contract. And so, therefore, it cannot be adjudicated. It's actually void and therefore unenforceable."

The trial court reasoned that the issue was one of contract interpretation governed by Family Code section 2610, subdivision (a), which provides that a court "shall make whatever orders are necessary or appropriate to ensure that each party receives the party's full community property share in any retirement plan." It then found the following: "There exists credible evidence before the Court contained in the pleadings and documents filed in this matter, together with the oral evidence presented at the hearing, that the parties intended to enter into a legally binding agreement which complied with California law. They sought and obtained assistance from the Judge Advocate General officer, and relied on his recommendations. The officer did

not suggest that the division set forth in the Agreement was contrary to law, and in fact, [Steven] stated that the parties were unaware of the 'time rule' at the time they entered into the Agreement. The Court thus interprets the Agreement, in accord with the parties' intention, as one which complies with the law." It ordered that the judgment/agreement be amended to divide Steven's pension according to the "time rule." It also noted that the forfeiture-upon-remarriage provision was void under Civil Code section 1669 and ordered that the amended judgment clarify that Laura's pension share not be forfeited upon remarriage.

## DISCUSSION

■ Generally, once a marital dissolution judgment has become final, the court loses jurisdiction to modify or alter it. (*In re Marriage of McDonough* (1986) 183 Cal.App.3d 45, 53 [227 Cal.Rptr. 872]; *Mueller v. Walker* (1985) 167 Cal.App.3d 600, 605 [213 Cal.Rptr. 442].) Under the doctrine of res judicata, " '[i]f a property settlement is incorporated in the divorce decree, the settlement is merged with the decree and becomes the final judicial determination of the property rights of the parties.' " (*Giovannoni v. Giovannoni* (1981) 122 Cal.App.3d 666, 669 [176 Cal.Rptr. 154].) In short, marital property rights and obligations adjudicated by a final judgment cannot be upset by subsequent efforts to "modify" the judgment.

"The sole remedy with respect to a judgment adjudicating a property division is a timely set-aside motion under [Code of Civil Procedure section] 473[, subdivision] (b) . . . , a timely appeal or, after the time for [Code of Civil Procedure section] 473[, subdivision] (b) relief expires, a [Family Code section] 2120 et seq. set-aside proceeding on statutorily-prescribed grounds and within statutorily-prescribed time limits . . . ." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2011) ¶ 17:340, p. 17-83 (rev. # 1, 2005), citation omitted; see *In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 32–33 [120 Cal.Rptr.2d 707] (*Heggie*); *In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 684 [76 Cal.Rptr.2d 691].)[3]

---

[3] "Traditionally, set aside motions in family law court have been governed by [Code of Civil Procedure] section 473 when brought within six months after the entry of judgment, and by the common law of extrinsic fraud when brought afterwards. [Citations.] [¶] The line between what was 'extrinsic' fraud and what wasn't, however, proved to be a 'repetitively troublesome issue in the family law field' [citation], and so in 1993 the Legislature undertook to rationalize the area by enacting sections 2120 through 2129 of the Family Code, also known as the 'Relief from Judgment' chapter." (*Heggie, supra*, 99 Cal.App.4th at p. 32.) "[Code of Civil Procedure] section 473 and the Relief from Judgment chapter (specifically Fam. Code, § 2122) now coexist, operating as alternative bases for relief, depending on when the application is filed. Within the six-month time limit under [Code of Civil Procedure] section 473, a litigant may seek relief from a family law judgment under either the statute's mandatory provisions (where the litigant's attorney is willing to swear to his own fault) or its discretionary provisions

■ The trial court therefore had no jurisdiction to modify the judgment in this case. The six-month period under Code of Civil Procedure section 473, subdivision (b) and the one-year period under Family Code section 2122, subdivision (e), the only arguably applicable Family Law set-aside provision, had long since expired. Laura makes no argument to the contrary.

There are three exceptions to the general rule.

■ First, a judgment may contain an express reservation of jurisdiction authorizing the court to subsequently modify it. (*Berry v. Berry* (1989) 216 Cal.App.3d 1155, 1159 [265 Cal.Rptr. 338]; *Mueller v. Walker, supra*, 167 Cal.App.3d at pp. 605–606.) In this case, the judgment does not contain such a provision.[4]

■ Second, the trial court may divide a community property asset not mentioned in the judgment. Before the enactment of Family Code section 2556, courts allowed a former spouse "to bring a separate partition action to divide assets omitted from a dissolution judgment . . . ." (*Berry v. Berry, supra*,

(where the court 'may' relieve a party of the consequences of his or her own mistake, inadvertence, surprise, or excusable neglect). Alternatively, the litigant may seek relief under any of the specific grounds specified in Family Code section 2122. However, after the six months pass, the litigant is limited to just the grounds specified in section 2122, and still faces some time limits. . . ." (*Ibid.*, fn. omitted.) Those grounds include (1) actual fraud, (2) perjury, (3) duress, (4) mental incapacity, or (5) mistake. (Fam. Code, §§ 2121, 2122.) Family Code section 2122 specifically provides: "The grounds and time limits for a motion to set aside a judgment, or any part or parts thereof, are governed by this section and shall be one of the following: [¶] (a) Actual fraud where the defrauded party was kept in ignorance or in some other manner was fraudulently prevented from fully participating in the proceeding. An action or motion based on fraud shall be brought within one year after the date on which the complaining party either did discover, or should have discovered, the fraud. [¶] (b) Perjury. An action or motion based on perjury in the preliminary or final declaration of disclosure, the waiver of the final declaration of disclosure, or in the current income and expense statement shall be brought within one year after the date on which the complaining party either did discover, or should have discovered, the perjury. [¶] (c) Duress. An action or motion based upon duress shall be brought within two years after the date of entry of judgment. [¶] (d) Mental incapacity. An action or motion based on mental incapacity shall be brought within two years after the date of entry of judgment. [¶] (e) *As to stipulated or uncontested judgments or that part of a judgment stipulated to by the parties, mistake, either mutual or unilateral, whether mistake of law or mistake of fact. An action or motion based on mistake shall be brought within one year after the date of entry of judgment.* [¶] (f) Failure to comply with the disclosure requirements of Chapter 9 (commencing with Section 2100). An action or motion based on failure to comply with the disclosure requirements shall be brought within one year after the date on which the complaining party either discovered, or should have discovered, the failure to comply." (Italics added.)

[4] The trial court was either unaware of this omission or unaware of the legal ramifications of the omission. At the hearing on Laura's motion, it remarked, "And just to clarify, just so there is no misunderstanding, what happens in a court proceeding in family law, the Court does have continuing jurisdiction to enforce its own orders."

216 Cal.App.3d at p. 1159; see *Henn v. Henn* (1980) 26 Cal.3d 323, 330 [161 Cal.Rptr. 502, 605 P.2d 10].) Currently, "the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding." (Fam. Code, § 2556.)[5]

■ And third, the trial court may give equitable relief from an otherwise valid judgment for extrinsic fraud or mistake. (*Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 470–472 [82 Cal.Rptr. 489, 462 P.2d 17].)

Laura urges that the second and third exceptions apply in this case.

Laura first contends that the trial court's analysis can support an omitted-asset theory because the judgment "omitted a portion of [Steven's] military retirement pay—it divided only the amount of retirement pay that [Steven] would have received if he had retired in 1999, at the time of the agreement." We disagree.

■ The mere mention of an asset in the judgment is not controlling. (See *Bowman v. Bowman* (1985) 171 Cal.App.3d 148, 156–157 [217 Cal.Rptr. 174].) "[T]he crucial question is whether the benefits were actually litigated and divided in the previous proceeding." (*Miller v. Miller* (1981) 117 Cal.App.3d 366, 371 [172 Cal.Rptr. 745].) Thus, the issue is whether the judgment fails to resolve any portion of the parties' interests in Steven's pension, resulting in a partially omitted asset to be divided according to Family Code section 2556. (See *In re Marriage of Simundza* (2004) 121 Cal.App.4th 1513, 1517 [18 Cal.Rptr.3d 377] (*Simundza*); *In re Marriage of Melton* (1994) 28 Cal.App.4th 931, 938–939 [33 Cal.Rptr.2d 761] (*Melton*).)

In the context of this case, whether Steven's pension was actually litigated and divided necessarily depends on the language of the judgment/agreement.

■ " 'Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretations of contracts generally.' [Citation.] 'The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.]

---

[5] Family Code section 2556 provides, "In a proceeding for dissolution of marriage, for nullity of marriage, or for legal separation of the parties, the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding. A party may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community estate asset or liability omitted or not adjudicated by the judgment. In these cases, the court shall equally divide the omitted or unadjudicated community estate asset or liability, unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset or liability."

When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible. [Citation.] "The words of a contract are to be understood in their ordinary and popular sense." ' " (*Simundza, supra,* 121 Cal.App.4th at p. 1518.)

Here, the words of the judgment expressly divide Steven's entire pension. The words allocate to Laura a fixed pension amount: "16% of [Steven's] retired pay." The words set the date when the pension payments begin: "starting [in] June 2008." Without more, these words express a fixed formula: 16 percent of 2008 retired pay. However, the words also qualify the "16% of 2008" formula: retired pay at the "rank and pay level" held in 1999. Thus, the parties agreed on the percentage allocated to Laura as of Steven's retirement date but they calculated the percentage as if Steven retired at his 1999 rank and pay level. The whole pension—retired pay—was considered. There is nothing left to divide. Laura's argument that part of the pension was omitted from the judgment because the judgment did not take into account Steven's years of service after 1999 is belied by the words of the judgment.

Laura's reliance on *Melton* is erroneous. There, the judgment allocated to the wife " 'one half of the Monthly Fixed Retirement Benefit to which [the husband] is entitled, the whole amount being $238[] . . . , the one half amount being $119[]' " and " 'one half of the sum of the Monthly Variable Retirement Benefit applicable to [the husband ($119.50 plus or minus one half of any percentage change in unit value)].' " (*Melton, supra,* 28 Cal.App.4th at pp. 935–936.) The amounts of $119 and $119.50 were based on the pension plan administrator's calculations of the husband's future pension and the calculations were attached as exhibits to the judgment and incorporated. In making his calculations, the plan administrator assumed that the husband would retire at a certain age, in a specified job classification, and with no changes in the benefit plan. When the husband ultimately began receiving retirement benefits at an older age, with a different job classification, and under an amended retirement plan, the value of the pension was significantly higher than the administrator's estimate. Upon the wife's motion to interpret and implement the judgment or to set aside the judgment for extrinsic fraud or mistake, the trial court relied on the judgment's "reservation of jurisdiction to implement the plan, and on its inherent equitable powers" and "determined the parties' intent was to divide the pension benefits equally." (*Id.* at p. 937.) As we did in this case, we held that the trial court exceeded its jurisdiction by rewriting the judgment. However, we concluded that "only a portion of [the husband's] pension was explicitly divided by the stipulated judgment." (*Id.* at p. 939.) We therefore remanded the case for a hearing on how to divide the omitted portion of the husband's pension.

Thus, in *Melton*, the judgment divided the pension in half and merely estimated what a half would amount to; when the estimate proved to be incorrect, the error was an omitted asset. Here, the judgment allocated an agreed-upon pension amount as calculated; the calculation results in a fixed pension amount—a calculation made for the judgment in 1999 and a calculation made on retirement in 2008 would be identical.[6] There is no omission in this case.

This case is akin to *Simundza*. There, the stipulated judgment allocated to the wife from the husband's pension upon retirement $200 monthly for 12 years. When the husband ultimately retired, the wife claimed that the value of the pension had increased since the judgment and reasoned that the judgment only partially divided the pension. She urged that the parties' intent was to equally divide the pension's community interest, which amounted to $575 monthly for the wife's lifetime. The trial court denied the wife's motion to further divide the pension. The appellate court affirmed because "nothing in the stipulated judgment suggested [that the wife] was entitled to anything more than the agreed-upon flat amount." (*Simundza, supra,* 121 Cal.App.4th at p. 1515.)

We also observe that the trial court erred not only in its construction of the language of the judgment/agreement but also by relying on Laura's testimony about her understanding of its terms.

■ Generally, parol evidence is inadmissible where the agreement's terms are unambiguous. (*Roden v. Bergen Brunswig Corp.* (2003) 107 Cal.App.4th 620, 624 [132 Cal.Rptr.2d 549].) In marital dissolution proceedings, extrinsic evidence is "admissible to ascertain the intent of an agreed . . . judgment of dissolution of marriage to the same extent such evidence would be admissible to ascertain the meaning of any other written agreement." (*In re Marriage of Trearse* (1987) 195 Cal.App.3d 1189, 1194 [241 Cal.Rptr. 257].) Under the parol evidence rule, if "[a] term of the agreement is . . . susceptible of more than one reasonable interpretation," a court may admit extrinsic evidence, but only if "it supports a meaning to which the language is reasonably susceptible . . . ." (*In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439 [64 Cal.Rptr.2d 766].) "As a matter of substantive law, extrinsic evidence cannot be relied on to support a meaning to which the agreement is not reasonably susceptible." (*Id.* at p. 1440.)

---

[6] It is conceivable that a calculation made in 1999 and a calculation made in 2008 could be different. For example, between 1999 and 2008, the military might have increased the pension for Steven's 1999 rank and pay level. But the parties' calculation formula takes this into account by allocating to Laura 16 percent of the 2008 retired pay of Steven's 1999 rank and pay level.

Here, Laura's purported intent to enter into a lawful agreement—which, according to Laura, means that the parties intended to divide the pension in conformity with the "time rule"—is legally irrelevant and factually a red herring.

First, the pension provision in the judgment states that the parties agreed to allocate 16 percent of the pension, as calculated, to Laura. As we have explained, this provision is unambiguous. But Laura's parol evidence—to the effect that the parties intended to allocate according to the "time rule"—contradicts the provision. It therefore supports a meaning to which the provision is not reasonably susceptible. Thus, the parol evidence is of no moment.

And second, even accepting Laura's parol evidence and the trial court's finding at face value—"the parties intended to enter into a legally binding agreement which complied with California law"—there is nothing unlawful about the parties' agreement and resultant judgment.

█ California law does not require that pensions be divided according to the "time rule." California law is that a court shall divide a community estate equally unless the parties agree on some other division. Family Code section 2550 states this principle: "Except upon the written agreement of the parties, or on oral stipulation of the parties in open court, or as otherwise provided in this division, in a proceeding for dissolution of marriage or for legal separation of the parties, the court shall . . . divide the community estate of the parties equally."   █   In other words, "Whenever, as in this case, the parties agree upon the property division, no law requires them to divide the property equally, and the court does not scrutinize the MSA to ensure that it sets out an equal division." (*Mejia v. Reed* (2003) 31 Cal.4th 657, 666 [3 Cal.Rptr.3d 390, 74 P.3d 166].)

Here, if the parties intended to enter into a legally binding agreement that complied with California law, the evidence is that they did so. They negotiated and divided Steven's pension and their other assets. That the parties were ignorant of the "time rule" does not render their actual agreement unlawful.

Laura finally contends that the trial court's analysis can support an extrinsic-mistake theory because she relied on the JAG who assured her "that the proposed division of [Steven's] military retirement benefits 'was in fact law.' . . . [Laura] reasonably relied on the JAG officer's erroneous advice in agreeing to the terms concerning [Steven's] retirement pay." Laura's analysis is erroneous.

First, Laura's contention rests upon the premise that the judgment/ agreement is unlawful, a premise that we have explained is without foundation.

And second, any mistake Laura made was intrinsic rather than extrinsic and, thus, no grounds for equitable relief.

■■■ The terms "extrinsic fraud" or "mistake" "are given a broad meaning and tend to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing. It does not seem to matter if the particular circumstances qualify as fraudulent or mistaken in the strict sense." (*In re Marriage of Park* (1980) 27 Cal.3d 337, 342 [165 Cal.Rptr. 792, 612 P.2d 882].) "Extrinsic mistake involves the excusable neglect of a party." (*Melton, supra,* 28 Cal.App.4th at p. 937.) It is a term that broadly applies "when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 [35 Cal.Rptr.2d 669, 884 P.2d 126].) "Extrinsic mistake is found when a party becomes incompetent but no guardian ad litem is appointed [citations]; when one party relies on another to defend [citations]; when there is reliance on an attorney who becomes incapacitated to act [citations]; when a mistake led a court to do what it never intended [citations]; when a mistaken belief of one party prevented proper notice of the action [citations]; or when the complaining party was disabled at the time the judgment was entered [citations]. Relief has also been extended to cases involving negligence of a party's attorney in not properly filing an answer [citations]; and mistaken belief as to immunity from suit." (*Kulchar v. Kulchar, supra,* 1 Cal.3d at pp. 471–472.)

In contrast, mistake is intrinsic and not a valid ground for setting aside a judgment "if a party has been given notice of an action and has not been prevented from participating therein." (*Kulchar v. Kulchar, supra,* 1 Cal.3d at p. 472.) In this circumstance, the mistake goes to the merits of the prior proceeding which the moving party should have guarded against at the time. (*Ibid.*)

Here, Laura was not prevented from participating in her dissolution action. She expressly acknowledged that the agreement she had negotiated "affect[ed] important personal and financial rights." She expressly acknowledged her right to consult with independent counsel and the desirability of consulting with independent counsel. That she chose to rely on the JAG's assurances about her important personal and financial rights instead of consulting with independent counsel was a mistake intrinsic to the litigation and attributable to her. (Cf. *Jorgensen v. Jorgensen* (1948) 32 Cal.2d 13, 22–23 [193 P.2d 728] [wife could not reasonably contend that there was such a mistake as to allow her to overcome the finality of a judgment where she chose to rely on

husband's statements as to what part of disclosed property was community]; *Kulchar v. Kulchar, supra,* 1 Cal.3d at p. 473 ["Relief is also denied when the complaining party has contributed to the fraud or mistake giving rise to the judgment thus obtained. [Citations.] 'If the complainant was guilty of negligence in permitting the fraud to be practiced or the mistake to occur equity will deny relief.' "]; *In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1070 [202 Cal.Rptr. 116] ["Even though a party is mistaken as to the law and the facts, this is an insufficient basis to set aside a valid judgment incorporating a marital settlement agreement, if the party reasonably could have discovered the mistakes."].)

As for the forfeiture-upon-remarriage clause, the clause is simply void and therefore unenforceable. (Civ. Code, § 1669 ["Every contract in restraint of the marriage of any person, other than a minor, is void."].)

## DISPOSITION

The order granting Laura's motion to modify is reversed. The trial court is directed to enter an order denying the motion. Steven is awarded costs on appeal.

Elia, J., and Mihara, J., concurred.

A petition for a rehearing was denied February 22, 2012.