Filed 3/9/16  Marriage of Clair CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Marriage of LUCY R. and RAY CLAIR. | B264982 |
| LUCY R. CLAIR,<br><br>    Appellant,<br><br>    v.<br><br>RAY CLAIR,<br><br>    Respondent. | (Los Angeles County<br>Super. Ct. No. ND071532) |

APPEAL from an order of the Superior Court of Los Angeles County.  Ana Maria Luna, Judge.  Reversed and remanded.

Hickman & Carrillo, Gale P. Hickman and Olivia Carrillo Hickman, for Plaintiff and Appellant.

Demler, Armstrong & Rowland and Bruce E. Sample, for Defendant and Respondent.

_____

In dissolution proceedings, Lucy R. Clair seeks to enforce a prenuptial agreement against Ray Clair.[1]  Lucy contends that under the terms of the agreement, retirement benefits or deferred compensation she received or became entitled to during her marriage to Ray are her separate property.  Ray takes the opposite view.  The trial court concluded the prenuptial agreement did not render the retirement benefits Lucy's separate property.  The court issued a certification of probable cause for immediate appellate review, pursuant to California Rules of Court, rule 5.392.  We granted Lucy's motion to appeal.  We reverse the trial court ruling.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 1993, Lucy and Ray entered into a prenuptial agreement (the agreement).  The agreement set forth its purpose: "Lucy and Ray desire to define their respective rights to the property of each other, and to avoid such interest which, except for the operation of this Agreement, they might acquire in the property of the other as incidence of their cohabitation and/or marriage relationship."  The agreement further stated: "Lucy and Ray desire that all property presently owned by either of them and additional property of any nature that comes to either of them from any source during their cohabitation, or marriage, shall be and remain their respective separate property, except as herein otherwise provided and subject to further written agreement between the parties."

The agreement listed each party's separate property, including items such as furniture, jewelry, bank accounts, and expected inheritances.  There was no mention of employment-related retirement accounts or deferred compensation.[2]

---

[1]     As is customary in family law proceedings, we refer to the parties by their first names for clarity and convenience.

[2]     The agreement did identify an IRA in the amount of $2,700 as an item of Lucy's separate property.

The agreement set forth additional terms regarding separate property. Under section III(c), the separate property identified in the agreement "shall remain" each party's separate property. The agreement provided that if the character of any identified separate property changed "in a manner that the source can be identified, any interest, benefit, dividend, income, or other increase from any such separate property shall remain separate property."

Section III(d) identified each party's employment at the time. Lucy was employed as a nurse midwife at Kaiser Hospital; Ray as a service manager at Cabe Toyota. The agreement stated: "During their cohabitation, prior to and after their marriage, they shall treat their receipts of salary from their respective employment as their separate property and each shall be solely and separately responsible for their own financial obligations or current existing debts listed heretofore, of which each acknowledges disclosure by the other as to those obligations." Each agreed to devote a portion of his or her salary to pay one-half of their joint living expenses.

Under section III(e): "Any property acquired by Lucy or Ray during their marriage by gift, bequest, devise, intestate succession, inheritance, or in any other manner except by their respective personal efforts, shall be and remain their respective separate property."

After 21 years of marriage, dissolution proceedings were initiated. Issues regarding the prenuptial agreement were bifurcated. In a trial brief filed before the proceedings, Ray argued that under section III(e) of the agreement, each spouse's earnings during the course of the marriage were to be community property, including earnings placed in retirement accounts. He also contended an interpretation of the agreement that deemed the entirety of Lucy's retirement accounts her separate property would render the agreement unconscionable. In a responsive brief, Lucy argued the agreement was not unconscionable when executed, and, under the plain language of the agreement, the retirement benefits are her separate property. She asserted the "personal efforts" language of section III(e) is most reasonably interpreted as referring to

3

community efforts by the parties other than those at their workplaces that generated salary, income, and earnings.

At a December 2014 hearing, Lucy testified she wanted the prenuptial agreement to protect her personal assets and to keep each spouse's personal property separate. She conceded one reason she and Ray entered the agreement was a concern that Ray's ex-wife might otherwise assert an interest in Lucy's salary to satisfy Ray's child support obligations. But Lucy testified there were other reasons for the agreement. These included Ray's debt in addition to child support arrearages, his lack of a driver's license, and his past arrests for driving under the influence. Lucy worked at Kaiser for around one and a half years before marrying Ray.

Lucy has three retirement or deferred compensation accounts: a pension plan, a 401(k) plan, and a tax savings retirement account (TSR).[3] Lucy did not remember if she ever told the lawyer who drafted the prenuptial agreement that she wanted Plan A and Plan B to be kept as her separate property. She believed the paragraph in the agreement indicating the parties would treat their receipts of salary as separate property also included her retirement plans. She described her retirement monies as "receipts of [her] salary." She did not think "personal efforts" meant her employment; instead to her it meant "something we decided to do together," like something done personally to enhance the property value on the farm she owned. During the marriage, Lucy contributed to the 401(k) through paycheck deductions, when she could afford to do so. Ray had her password and he occasionally managed distributions and how the money was being invested.

Ray testified the prenuptial agreement came about because he and Lucy feared his ex-wife would try to attach Lucy's earnings. They each prepared a list of their assets and liabilities. Lucy never mentioned her retirement accounts at that time; Ray was unaware

---

[3]  The parties referred to a Plan A, Plan B, and the TSR. It appears from Lucy's testimony that Plan A is the pension plan and Plan B is the 401(k), to which Kaiser contributed. It is not clear whether Lucy had the TSR prior to the marriage, as the testimony concerned only Plan A and Plan B.

she had them until after they were married. While married, Lucy and Ray did not keep their earnings in separate accounts. When Ray cashed out his own 401(k) and was concerned because that was "all the money [he] had," Lucy said they had "Kaiser's money." Ray understood this to mean the accounts were community property. According to Ray, he frequently accessed Lucy's "Kaiser retirement monies" to check or manage the investments.

The transcript of the deposition of the attorney who drafted the agreement was entered into evidence. The attorney recalled that Ray and Lucy were concerned about both of their incomes being used to calculate child support, given that Ray owed child support arrearages. The attorney advised them to keep their earnings in separate accounts. He did not recall Lucy or Ray ever mentioning any 401(k) accounts, pensions, or other retirement accounts. As to the "personal efforts" language, he indicated: "I think what I was trying to get to in that paragraph is, is if they have this separate property, and it would go both ways, if she took her community efforts . . . and went down and improved that separate property, okay, then that increase in valuation would be community and subject to division at the time of dissolution." Also admitted into evidence were trust documents Lucy and Ray executed three years after they were married. In the trust documents the 401(k), "Kaiser retirement plan," and TSR were identified as community property.

In a written ruling, the trial court found the parties never treated their salary as separate property and they never agreed that their retirement or deferred compensation benefits would be considered separate property pursuant to the agreement. The court interpreted the term "salary" as "money received from a paycheck and nothing more." The court concluded: "Given the lack of mutual understanding between the parties before the agreement was executed and the plain meaning to be ascribed to the word 'salary,' the Court cannot conclude that the parties mutually intended that their respective retirement benefits were to be included as separate property in the premarital agreement." The court expressly noted it was not concluding there was a transmutation, explaining it "rel[ied] on the trust document as some substantiation as to where the parties' heads were

5

as far as the retirement and deferred compensation. The Court does not have to determine if a transmutation occurred at this point because the Court is finding that both parties were on different wavelengths as to what 'salary' meant." The written findings stated the court did not consider Family Code section 1615, but instead decided the issue under contract law alone. The court certified there was probable cause for immediate appellate review of the order.[4] We granted Lucy's subsequent motion to appeal.

## DISCUSSION

### Under the Prenuptial Agreement Lucy's Retirement Benefits are Her Separate Property

As we understand her arguments on appeal, Lucy argues that under the terms of the prenuptial agreement, her retirement benefits, in their entirety, are her separate property. In connection with this argument, she asserts that to the extent section III(e) contained language that conflicts with other terms of the agreement it should be disregarded. She also argues the trial court erred in considering extrinsic evidence because the agreement was not ambiguous. We agree that Lucy's retirement benefits are her separate property under the agreement.[5]

---

[4] The court's certification stated, in part: "This Court's findings that the parties' prenuptial agreement was not a binding contract, and that the parties did not share a mutual intent that their respective retirement benefits were to be their separate property, is the central issue in the characterization and division of their community estate."

[5] We note the trial court's ruling included broad language that "no contract" was formed and that the prenuptial agreement "did not form an enforceable contract." We requested supplemental briefing from the parties on the issue of whether this language reflected a trial court finding that the entire prenuptial agreement was invalid due to a lack of mutual consent. We are persuaded by respondent's argument that the trial court reached no such conclusion and, in the context of the document and proceedings as a whole, we understand the "no contract" language as referring only to the finding that the prenuptial agreement did not reflect an agreement between the parties regarding the characterization of Lucy's retirement benefits. In accordance with the usual rules on appeal, we review the trial court's ultimate ruling, not its rationale. (*In re Marriage of Boblitt* (2014) 223 Cal.App.4th 1004, 1028.)

6

Premarital agreements are interpreted using the same rules that govern the interpretation of contracts in general. (*In re Marriage of Bonds* (2000) 24 Cal.4th 1, 13, superseded by statute on another ground as stated in *In re Marriage of Cadwell-Faso & Faso* (2011) 191 Cal.App.4th 945, 956.) "In interpreting a written agreement, we 'look first to the language of the contract . . . to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it.' [Citation.] 'A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.' (Civ. Code, § 1636.) The intent is to be inferred, if possible, *solely from the written provisions of the contract.* (Civ. Code, § 1639.) Language in a contract must be interpreted as a whole and in the circumstances of the case, and cannot be deemed ambiguous in the abstract." (*In re Marriage of Facter* (2013) 212 Cal.App.4th 967, 978.) " '[I]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation [Citation]. The parties' undisclosed intent or understanding is irrelevant to contract interpretation." (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 956.)

"Extrinsic evidence of the parties' intentions is inadmissible to vary, alter, or add to the terms of an unambiguous agreement." (*In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1440.) Yet, when it is not possible to infer the parties' intent solely from the contract's written provisions, as when the language of the agreement is reasonably susceptible to more than one meaning, the court may admit extrinsic evidence if it supports a meaning to which the contract language is reasonably susceptible. (*In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492, 503; *Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 645.) "Where no extrinsic evidence is introduced, or the extrinsic evidence is not in conflict, we independently construe the agreement. [Citation.] Where competent extrinsic evidence is in conflict, we uphold any reasonable construction by the lower court. [Citation.]" (*In re Marriage of Schu* (2014) 231 Cal.App.4th 394, 399.) Such a reasonable construction must be supported by substantial evidence. (*Roddenberry v. Roddenberry, supra,* 44 Cal.App.4th at p. 651.)

7

The essential question posed in this case was whether the prenuptial agreement covered the retirement benefits, rendering them Lucy's separate property. The language of the agreement itself provides the answer. The agreement identified its purpose as to maintain the separate character of property Lucy and Ray owned at the time of the execution of the agreement, and to keep separate property either spouse acquired in the future, "from any source," "except as herein provided and subject to further written agreement between the parties." The parties further expressed their desire to "avoid such interest which, except for the operation of [the agreement], they might acquire in the property of the other as incidence of their cohabitation and/or marriage relationship." In other words, Lucy and Ray wanted to avoid the creation of community property; all property individually acquired by either spouse was to be separate property.

Section III(d) thus identified each spouse's "salary" as separate property. Although Lucy appeared to argue below that "salary" included all of her compensation, including her retirement benefits, in her reply brief on appeal, she indicates she is *not* claiming the retirement benefits were part of her "salary" under the agreement. We agree the language of section III(d) does not on its own reflect an intent to characterize either party's retirement benefits as separate property after marriage. But this provision identifies salary as one form of property the parties agreed would be construed as individually-acquired property to be kept separate.

Along these same lines, section III(e) renders *any* property acquired by either spouse, *in any manner*, to be separate property, except property acquired by the parties' "respective personal efforts." This is a broad provision that would necessarily apply to Lucy's retirement benefits, unless the "respective personal efforts" language exempted the benefits from the provision. "Personal efforts" is not defined in the agreement. Ray argues "respective personal efforts" should be interpreted to include compensation. In the abstract, property acquired through "personal efforts" in a family law context could reasonably suggest assets resulting from a spouse's skill or labor. (See e.g., *In re Marriage of Harrison* (1986) 179 Cal.App.3d 1216, 1226 [" '[E]ach spouse's time, skill, and labor are community assets, and whatever each spouse earns from them during

8

marriage is community property.' . . . Fringe benefits are not a gift from the employer but are earned by the employee as part of the compensation for services."].) But, in this case, interpreting "respective personal efforts" to include compensation earned through employment would be entirely inconsistent with the nature and express purpose of the prenuptial agreement. For example, construing "respective personal efforts" to mean employment-related compensation would necessarily include salary, yet there can be no dispute that the agreement clearly characterized each spouse's salary as separate property.

Several principles of contract interpretation are relevant here. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) "Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract." (Civ. Code, § 1652.) However, "[w]ords in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected." (Civ. Code, § 1653) Our task, to the extent possible, is to give effect to all provisions of the agreement. (Code Civ. Proc., § 1858.)

Interpreting "respective personal efforts" to mean employment compensation simply does not square with any other provision of the contract, which expressly defined the intent of the agreement as to keep the parties' property separate, whether acquired before or during the marriage, and which explicitly included salary, one specific form of employment-related compensation.

Because the term "respective personal efforts" is uncertain, the court could properly consider extrinsic evidence to the extent such evidence supports a meaning to which the contract language is reasonably susceptible. Yet, most of the extrinsic evidence in this case did not fit in this category. Testimony indicating Lucy and Ray did not discuss the retirement benefits neither helps explain the meaning of "respective personal efforts" nor helps harmonize the term with the other express provisions of the agreement characterizing as separate *all* property the spouses had or would acquire during the marriage. The trust document listed the retirement accounts as "community

9

property," but that alone fails to illuminate the meaning of "respective personal efforts" at the time the parties executed the agreement. As noted above, if the term was intended to exempt compensation from the separate property characterization, it would include salary, thus conflicting with other express provisions in the agreement.

The only extrinsic evidence admitted that was relevant to the meaning of the term "respective personal efforts," was the deposition testimony of the lawyer who drafted the original agreement. According to that testimony, Lucy owned a farm, and the "respective personal efforts" language was included to create an exception that might arise if, for example, the spouses devoted significant time, energy, or labor to what was otherwise entirely one spouse's separate property. Even this description failed to clearly define "respective personal efforts," as the lawyer appeared to describe joint efforts, rather than "respective personal efforts." But the inference we draw from this evidence is that the term was not intended to refer to employment-related compensation. (*In re Marriage of Facter, supra,* 212 Cal.App.4th at p. 979 [uncertain provision must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it; court's duty is to resolve ambiguities by taking into account all the facts, circumstances and conditions surrounding the execution of the contract].)

With the exception of the "respective personal efforts" language, the prenuptial agreement was clear and unambiguous. The agreement reflects the parties' mutual consent to a contract in which the property they had, and property they acquired in the future, would be separate property. The agreement contained both specific clauses (i.e., listing identified property) and general clauses to this effect. Whatever the precise meaning of "respective personal efforts," it could not mean that employment-based compensation was not separate property without conflicting with the agreement as a whole. Thus, we conclude that under the explicit terms of the agreement, Lucy's retirement benefits are properly characterized as her separate property.[6]

---

[6] We express no opinion on whether any other legal principle in family or contract law would render the agreement unenforceable, or on any issue of transmutation, which

10

In light of this conclusion, we need not address Lucy's argument that she is entitled to trace or be reimbursed for any separate property contributions to the retirement accounts. We reverse the trial court ruling concluding the prenuptial agreement does not render Lucy's retirement benefits her separate property.

## DISPOSITION

The trial court order is reversed and the matter is remanded for further proceedings. Appellant to recover her costs on appeal.

BIGELOW, P.J.

We concur:

RUBIN, J.

FLIER, J.

---

the trial court also expressly did not consider. Instead, we answer only the question of whether, under the terms of the agreement, Lucy's retirement benefits are separate property.