Filed 5/15/23  Marriage of Hering CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of HEATHER L. and ELMER HERING. | H050515 (Monterey County Super. Ct. No. 16FL002167) |
| HEATHER L. HERING, Appellant, v. ELMER HERING, Respondent. | |

In this dissolution of marriage action, Heather Hering (Heather) appeals from a postjudgment order concerning the marital settlement agreement between Heather and her former husband Elmer Hering (Elmer).[1]  The trial court interpreted the agreement as requiring Heather to refinance a loan on a 2018 Keystone Springdale camper (the camper) owned by Heather and to remove Elmer as a cosigner to the loan.

On appeal, Heather contends the trial court lacked jurisdiction to modify the marital settlement agreement and erred in its interpretation.  Heather asserts the court

---

[1] For clarity we refer to the parties by their first names as they appear in the briefing.  (See *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1.)

effectively nullified the term of the marital settlement agreement awarding the camper to her as her separate property.

We affirm the order.

## I. FACTS AND PROCEDURAL BACKGROUND

Heather and Elmer married in 2010 and separated in 2016. In October 2016, Heather filed a petition for dissolution of the marriage. In December 2016, Elmer filed a response and request for dissolution. Sometime after their separation, Heather bought the 2018 camper which is at issue in this appeal. Elmer cosigned the loan on the camper.

In October 2019, Heather and Elmer entered into a marital settlement agreement (agreement). Heather was represented by counsel, and Elmer was self-represented. In January 2020, the trial court filed a judgment of dissolution (judgment). The judgment expressly incorporates the agreement and reserves jurisdiction to the court "to make other orders necessary to carry out this judgment." The stated purpose of the agreement "is to make a final and complete settlement of all rights and obligations" between Heather and Elmer, including their "respective property rights, and [their] responsibility for debts."

The agreement describes the relevant details of Heather's and Elmer's marriage and separation, child custody and visitation, child and spousal support, property division and confirmation of separate property, the legal effect of the agreement, and provisions for modification and enforcement. The "2018 Keystone Springdale camper, plus loan therefor" is denoted as Heather's "sole and separate property." The agreement limits any modification of the terms of the agreement, except by a writing signed by both parties, or by the court with respect to child custody, visitation, and support.

In May 2022, Elmer filed a request for order with the trial court, using the standard judicial council form. Under "Other Orders Requested" (some capitalization omitted), Elmer typed: "[Heather] refinance the 2018 Keystone Springdale Camper obligation confirmed to her as her separate property and remove [Elmer] from the loan

2

and title." Under "Facts to Support" (some capitalization omitted) the requested order, Elmer referred to an attached declaration.[2]

Heather opposed the request for order. In her declaration opposing the request, Heather stated the camper "was and is [her] separate property," as confirmed in the dissolution judgment, and the debt "is [her] separate debt" on which she has "made payments continuously through a direct withdrawal from [her] bank account." Heather explained that, after their separation, Elmer had volunteered to help her with the loan through his credit union. She maintained that the judgment "confirmed the camper, and the loan were [her] separate assets and obligation without reserving any jurisdiction over these issues." Heather further attested that even though she was under no legal obligation to do so, she had "actually tried to refinance the loan in [her] name, and it was declined, and [she] was unable to do so." Heather requested that the court award her $2,500 in attorney fees for the fees incurred in responding to the request for order. Heather's counsel also submitted written argument in opposition to the request for order. These arguments centered on the finality of the judgment and the court's lack of jurisdiction, in the absence of an express reservation, to modify or alter the judgment.

In his rebuttal declaration to Heather's opposition, Elmer averred that Heather made late payments on the account, which were affecting his credit. Elmer attached to the declaration a printout of "screen shots showing that the account is delinquent." Elmer asserted that Heather acknowledges the camper and the debt on the camper are her separate property, and thus "needs to get the debt out of [his] name to comply with the terms of the judgment" and ensure he is not liable for the debt. Elmer also argued that if

---

[2] Elmer's declaration in support of the requested order appears to be missing from the record on appeal (appellant's appendix). According to appellant's opening brief on appeal, Elmer's supporting declaration claimed that Heather made late payments which damaged his credit rating, though he did not present any evidence of delinquency.

Heather could not refinance the loan and remove his name from the debt, then "the camper should be sold and the debt should be paid off."

On September 14, 2022, the trial court issued findings and order after hearing, granting Elmer's request (order). The order indicated that a hearing was held the month prior, with both parties present and represented by counsel. The order states in full: "1. The court finds that there was an implied agreement in the Judgment filed January 28, 2020 that [Heather] owns the obligation on the 2018 Keystone Springdale Camper and the court orders that the loan is to be refinanced by [Heather] and remove [Elmer] from the obligation. [¶] 2. [Heather] has 60 days to refinance the obligation on the camper and remove [Elmer] from that obligation. [¶] 3. The court denies [Heather]'s request for attorney fees."

Heather timely appealed the trial court's order.[3]

## II. DISCUSSION

Heather contends the trial court's order must be reversed for several reasons. She argues that (1) the trial court lacked jurisdiction to modify the agreement, (2) the court's interpretation of the agreement based on an "implied term" contradicts the agreement terms and deprives Heather of an express benefit, (3) the rules of contract interpretation do not permit the court to add a term requiring her to get her own financing, and (4) Elmer's claim concerning late payments is unsupported by any evidence in the record and is, in any event, irrelevant to deciding whether Heather must refinance the loan.

Elmer has not filed a respondent's brief. We thus decide the appeal based on the record, opening brief, and oral argument by Heather. (Cal. Rules of Court, rule 8.220(a)(2) & (c).) We first address the trial court's jurisdiction to modify the judgment before turning to the contractual interpretation of the agreement.

---

[3] This order after judgment is appealable. (Code Civ. Proc., § 904.1, subd. (a)(2), (10); Fam. Code, § 3554.)

The trial court's interpretation of the marital settlement agreement and jurisdiction, if any, to modify the judgment are questions of law subject to de novo review. (*In re Marriage of Rosenfeld & Gross* (2014) 225 Cal.App.4th 478, 485; *In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439 (*Marriage of Iberti*).)

A. *Modification of the Judgment*

Heather contends that the trial court had no jurisdiction to order that she refinance the loan on the camper. She relies on the general principle that, absent an express reservation of jurisdiction, a court loses jurisdiction to modify or alter a judgment of marital dissolution once the judgment has become final. (See *In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492, 499 (*Marriage of Thorne*).) Heather's argument depends on an unstated presumption that the trial court's order effected a modification of the judgment.

We disagree that the order to refinance the loan on the camper and remove Elmer from the obligation constituted a modification. "Generally, once a marital dissolution judgment has become final, the court loses jurisdiction to modify or alter it." (*Marriage of Thorne*, *supra*, 203 Cal.App.4th at p. 499.) This rule extends to a settlement agreement incorporated into the judgment. "Under the doctrine of res judicata, ' "[i]f a property settlement is incorporated in the divorce decree, the settlement is merged with the decree and becomes the final judicial determination of the property rights of the parties." ' " (*Ibid*.) Consequently, with limited exceptions, "marital property rights and obligations adjudicated by a final judgment cannot be upset by subsequent efforts to 'modify' the judgment." (*Ibid*.)

One exception to the general rule is that a "judgment may contain an express reservation of jurisdiction authorizing the court to subsequently modify it." (*Marriage of Thorne*, *supra*, 203 Cal.App.4th at p. 500.) The judgment in this case, however, does not contain an express reservation of jurisdiction over modifications. Under the stipulated terms, any modification (apart from changes to child custody, visitation, or support) is

5

available only by a writing signed by the parties "that expressly refers" to the agreement. However, the judgment does reserve jurisdiction of the court "to make other orders necessary to carry out this judgment."

Heather argues that because the agreement does not contain a reservation of jurisdiction and the parties did not elect to make a change, in writing, to the agreement, the court "had no authority to modify the agreement." This argument is correct as to modification of the judgment but fails to address the court's continuing jurisdiction to make orders necessary to carry out the judgment. Based on our independent review of the record, the trial court's order concerning the camper loan does not modify the judgment but was, in fact, necessary to carry out the judgment.

The judgment, having incorporated the parties' agreement, unequivocally categorizes the "2018 Keystone Springdale camper, *plus loan therefor*" as Heather's separate property. (Italics added.) The entire provision states, "We agree that [Heather] owns the property listed below as her sole and separate property, and [Elmer] disclaims and waives all right and interest therein: . . . 2018 Keystone Springdale camper, plus loan therefor; bank accounts in [Heather]'s name; [Heather]'s bonds, in her maiden name of Schlough." Elsewhere, the agreement provides that it constitutes the "entire agreement" concerning the parties' settlement of rights and obligations, including property rights and liability, and that "there are no enforceable representations or warranties other than those set forth in [the] Agreement."

As discussed *post*, we interpret the term as an unambiguous expression of intent that both the camper property and the loan pertain exclusively to Heather. Heather does not discuss the inclusion of "plus loan therefor" in the term designating the camper as her separate property. Nor does she point to any language in the agreement that would support requiring Elmer to remain liable for the loan on the camper despite their designation of the camper "plus loan therefor" as Heather's sole and separate property.

6

The trial court's order effectuates that intent by requiring Heather to remove Elmer from the loan obligation. The order specifically finds "that there was an implied agreement . . . that [Heather] owns the obligation on the 2018 Keystone Springdale Camper and the court orders that the loan is to be refinanced by [Heather] and remove [Elmer] from the obligation" and gives Heather 60 days to refinance the loan on the camper and remove Elmer from the obligation on the loan. This order does not alter the parties' obligations under the judgment, but simply finds that to effectuate the intent of the parties regarding the camper and loan, the loan must be refinanced to remove Elmer from any obligation under it.

The express intent to make the camper and associated loan Heather's separate property, and limited request for an order to carry that out, distinguishes the circumstances of this case from cases that Heather cites involving modification of judgments. For example, *Marriage of Thorne* involved a stipulated marital dissolution judgment in which the wife agreed to accept 16 percent of the husband's military retired pay based on his rank and pay level at the time of the judgment, then later sought to set aside the judgment because she learned that California courts typically apply a different rule for apportioning the community share of military pay. (*Marriage of Thorne*, *supra*, 203 Cal.App.4th at p. 495, fn. 2.)

In another example cited by Heather, the judgment provided for the payment of spousal support to be "stepped down" annually until reduced to zero, unless the supported spouse timely filed a motion showing good cause for support to be continued. (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1471.) The supported spouse instead filed a motion to set aside the judgment and sought modification of the support provisions, including "an upward modification of spousal support" and payment beyond the date set in the judgment for the support award to be zero. (*Id.* at p. 1472.)

These cases involved requested changes to the judgment that would fundamentally alter the nature of the obligation between the spouses that was initially agreed upon.

Here, by contrast, Elmer's request that Heather "refinance the 2018 Keystone Springdale Camper obligation[,] confirmed to her as her separate property[,] and remove [Elmer] from the loan and title" did not alter the obligations imposed by the judgment but was instead necessary to carry out those obligations.

Given the express designation in the judgment of the camper and loan as pertaining solely to Heather, we conclude the trial court's order requiring Heather to remove Elmer from the loan obligation was within the court's jurisdiction—expressly retained in the text of the judgment—"to make other orders necessary to carry out this judgment."

B. *Interpretation of the Marital Settlement Agreement*

Heather challenges the trial court's interpretation of the judgment as inconsistent with the terms of the agreement and contrary to the rules of contract interpretation. We disagree and conclude that the trial court's interpretation is consistent with the parties' expressed intent and does not add new terms to the agreement.

"Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretations of contracts generally." (*Marriage of Iberti*, *supra*, 55 Cal.App.4th at p. 1439; see Civ. Code, § 1635 et seq.) In construing the agreement, we seek to give effect to the mutual intent of the parties as it existed at the time of contracting based on the contract's written provisions and considering the circumstances when the parties signed the settlement agreement. (Civ. Code, §§ 1636, 1638, 1639, 1647; *In re Marriage of Hibbard* (2013) 212 Cal.App.4th 1007, 1013.) We independently review the agreement in accordance with these rules. (*Marriage of Hibbard*, at p. 1012.) "When the language of the judgment incorporating the marital settlement agreement is clear, explicit, and unequivocal, and there is no ambiguity, the court will enforce the express language." (*Marriage of Iberti*, at p. 1440.)

The language of the agreement forming the judgment in this case is clear and unequivocal in explicitly specifying that the camper "plus loan therefor" are Heather's

8

sole and separate property.  Although a loan is not, strictly, property, we interpret the terms used in an agreement according to their "ordinary and popular sense, rather than according to their strict legal meaning[,] unless used by the parties in a technical sense." (Civ. Code, § 1644; *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822.)

It is apparent from the inclusion of "loan therefor" in the designation of Heather's separate property that the parties intended to give Heather sole ownership over and legal responsibility for the camper and the loan.  This interpretation also finds support in the agreement's treatment of encumbrances on community and quasi-community assets.  The paragraph on encumbrances provides, as to "all property assigned under" the agreement, except as otherwise specified, that "the assignee spouse assumes all encumbrances and liens on the property and agrees to indemnify and hold the other party free and harmless from any claim or liability that the other party may suffer or may be required to pay because of those encumbrances or liens."  A cosigner is liable under a consumer loan and obligated for any default.  (See Civ. Code, § 1799.91 [requiring notice of liability for cosigners to consumer credit contracts].)  To construe the provision as intended to apply only to the camper, leaving undisturbed Elmer's status as cosigner to the loan, would require that Elmer remain liable for the loan.  This outcome is incompatible with the express designation of "loan therefor" as Heather's sole and separate "property" and with the parties' intent to hold the non-assignee spouse "free and harmless from any claim or liability" on the assigned property.

Requiring Elmer to remain liable for the camper loan also would contravene the indemnity and hold harmless provision of the agreement, which provides that "[e]xcept for the obligations contained in or expressly arising out of this Agreement, [each party] warrant[s] . . . that he or she . . .  shall not incur, any liability or obligation for which the other party is, or may be liable."  Taken together, the absence of language in the agreement providing for any continuing obligation of Elmer under the loan, and the express designation of the loan as Heather's separate property, lead us to conclude that

9

the parties' intent was for Heather to assume the loan as her separate obligation.  It is implicit in the agreement's language designating the camper and loan as Heather's alone that Elmer necessarily cannot remain a cosigner to the loan.

Heather argues that implied terms in a contract are disfavored and should be read into a contract only where necessary to effectuate the purpose of the contract.  She contends there is no justification in this case for adding a term requiring her to obtain financing for the camper loan—an order she maintains effectively negates the benefit assigned to her under the agreement and thwarts the parties' intention to award the camper to her.

"Implied terms are not favored in the law, and should be read into contracts only upon grounds of obvious necessity.  [Citation.]  A court may find an implied contract provision only if:  (1) the implication either arises from the contract's express language or is indispensable to effectuating the parties' intentions; (2) it appears that the implied term was so clearly within the parties' contemplation when they drafted the contract that they did not feel the need to express it; (3) legal necessity justifies the implication; (4) the implication would have been expressed if the need to do so had been called to the parties' attention; and (5) the contract does not already address completely the subject of the implication." (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1222 (*Marriage of Corona*), citing Civ. Code, §§ 1655, 1656.)

The Court of Appeal in *Marriage of Corona* examined the circumstances in which a court may imply a term in a marital settlement agreement.  At issue in that case was a provision to the marital settlement agreement requiring the husband to pay a portion of the wife's income taxes.  (*Marriage of Corona*, *supra*, 172 Cal.App.4th at p. 1209.)  The husband argued on appeal from a family court order requiring him to pay more than $36,000 as his share of the wife's tax obligations that the wife had an implied duty not to impose excess liability on him by her selection of tax filing status, and to mitigate and minimize the amount of her tax liability.  (*Id*. at pp. 1219–1220.)  The appellate court

10

recognized the statutory rules of construction pertaining to implied terms but ultimately declined to infer from the agreement an implied duty to minimize tax liability, since the husband had not shown that such a provision was " '*necessary* to make [the agreement] reasonable' " (*id*. at p. 1223, citing Civ. Code, § 1655) or was "otherwise indispensable or legally necessary to carry the [agreement] into effect" (*ibid*., citing Civ. Code, § 1656). The court also questioned the effect of the proposed implied contract term on the agreement provision requiring the husband to pay designated spousal support (including one-half of the wife's income taxes) irrespective of her remarriage, since that provision "arguably express[ed] a " 'contrary intention' " that might be affected by an implied term requiring the wife to file under a particular tax filing status. (*Marriage of Corona*, at p. 1223.)

This case is unlike *Marriage of Corona*. Whereas the husband's proposed interpretation of the tax provision in that case would have benefited him but was not necessary to carry out the legal effect of his obligation to pay his ex-wife's taxes (*Marriage of Corona*, *supra*, 172 Cal.App.4th at pp. 1222–1223), removing Elmer from the camper loan is necessary to carry out the parties' intent that Heather "own" the loan. Put differently, it would be unreasonable to require Elmer to remain legally obligated and liable under a loan that the stipulated agreement unequivocally assigned to Heather. "Stipulations which are necessary to make a contract reasonable, or conformable to usage, are implied, in respect to matters concerning which the contract manifests no contrary intention." (Civ. Code, § 1655.)

We are not persuaded by Heather's claim that construing the agreement in this manner nullifies the provision awarding the camper to Heather and thwarts the parties' intention. Heather maintains that if any term were to be implied, it would be that the "parties agree to maintain the status quo, namely, that Elmer remain a cosigner," a term she asserts is "indispensable to effectuating the parties' intention, which was to award the camper to Heather." However, this assertion fails to address the express designation in

11

the agreement of the "loan therefor" to Heather or to reconcile Heather's position that the "debt is [her] separate debt." While Heather is correct that the court may not revise or alter the agreement, under the guise of interpretation, neither may the court ignore the terms of the agreement that are expressly contained therein. (Civ. Code, § 1638; see Code Civ. Proc., § 1856.) Having independently reviewed the agreement, we are unable to derive from its express terms any suggestion that the parties intended for Elmer to remain a cosigner notwithstanding their express allocation of the camper loan under the provision for Heather's separate property.

We understand Heather's frustration that, if she is unable to independently refinance the loan on the camper, she will be deprived of the benefit of the property that was specifically awarded to her. Nevertheless, we do not agree that construing the agreement to require Elmer's removal from the obligation on the camper equates to a deprivation of that property.

We decline to address Heather's argument concerning the lack of evidence to support Elmer's claim that she had made late payments on the loan, as the status of loan payments is immaterial to our review of the agreement and its construction.

## III. DISPOSITION

The trial court's September 14, 2022 order after hearing is affirmed.

12

_____
Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P.J.

_____
Bromberg, J.

**H050515**
*Hering v. Hering*