Filed 11/9/22  Marriage of Williams CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of JOSEPH and ROBIN WILLIAMS. | |
| JOSEPH A. WILLIAMS, Respondent, v. ROBIN WILLIAMS, Appellant. | G059573 (Super. Ct. No. 94D10500) O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Michael E. Perez, Judge.  Reversed and remanded with instructions.

Law Offices of Lisa R. McCall, Lisa R. McCall, and Erica M. Baca for Appellant.

Law Office of Leslie Ellen Shear, Leslie Ellen Shear, and Julia C. Shear Kushner for Respondent.

*      *      *

Robin Williams appeals from the trial court's denial of her motion under the court's continuing jurisdiction (Fam. Code, § 2556) to adjudicate her rights, if any, to a share of pension benefits earned by her former husband, Joseph A. Williams, during their marriage.[1] According to Robin, at some unspecified time before their divorce, Joseph signed a written agreement concerning the pension and other assets, in which he expressly agreed she was entitled to "1/2 of Joe's IBEW retirement unless I get my own." The document similarly divided the couple's other community property. Joseph did not dispute the authenticity of the document, but claimed the couple had "moved on from that position" before executing the default judgment he obtained in 1995, which dissolved the marriage.

The default judgment signed by Robin included this language: "There are no community or quasi-community assets, community debts, or retirement benefits *to be disposed of by the court*." (Italics added.) The trial court ruled that the foregoing "clause adjudicated the pension," and therefore "there isn't [section] 2556 . . . relief available." As we explain, on our de novo review of the words of the default judgment, we are not persuaded that a clause *disclaiming* adjudication by the court amounted to a binding prior adjudication by the court of an unnamed asset.

Moreover, the trial court's failure to resolve this disputed factual issue— namely, the parties' rights to Joseph's pension—requires reversal. We cannot agree with Joseph's position that his extrinsic evidence proved as a matter of law that the default

---

[1] All further statutory references are to the Family Code, unless noted. For ease of reference and to avoid confusion, given the parties have the same last name, we refer to each party by their first name and intend no disrespect in doing so.

judgment somehow incorporated and ratified, with res judicata effect, an unwritten marital property division agreement purportedly agreed to outside the judgment and now sharply disputed by the parties.

Simply put, the factual discrepancies between Robin's and Joseph's accounts about the substance of their agreement, if any, required the trial court to determine as a factual matter what the parties' actual agreement was before it made its ruling. The default judgment did not adjudicate these questions. We therefore reverse the trial court's order and remand the case for these factual questions to be resolved.

## FACTUAL AND PROCEDURAL BACKGROUND

Robin and Joseph married in 1971 and separated in 1990 or 1991. Joseph began accruing an interest in an employment-based pension in July 1974, and continued to do so until he retired in 2004. Ten years earlier, in October 1994, Joseph filed a petition for dissolution of the marriage.

Joseph's petition included his declaration "regarding community and quasi-community assets and obligations" in which he stated that "[t]here are no such assets or obligations subject to disposition by the court in this proceeding." In this same section of Joseph's declaration, the following boxes were left unchecked: "All such assets and obligations have been disposed of by written agreement"; and "All such assets and obligations are listed . . . in [an] Attachment . . . below." A box next to the statement "Petitioner requests confirmation as separate assets and obligations [any listed] items" did not specify or list elsewhere in the petition any items he claimed as his separate property. The petition did not suggest any community assets had been divided by oral agreement or disposed of in any other manner.

During the dissolution process, Robin prepared a written agreement regarding division of the parties' community assets, which Joseph does not dispute he signed. The updated agreement provided (bold typeface added):

3

"1.     Quick [*sic*] claim 3201 S. Lowell house over to me/Robin.

"2.     Quick [*sic*] claim 3706 S. Sycamore over to Joe Williams.

"3.     1/2 of Joe's social security to Robin La Rue [her maiden name] unless I get my own.

"4.     **1/2 of Joe's IBEW retirement unless I get my own.**

"5.     **[$]600.00 a month alimony till [*sic*] January 15th 2001**.

"6.     If something happens to Joseph A. Williams before January 15th 2001 provisions will be made from the estate.

"7.     Money in savings accounts and IRAs will be split jointly."

Joseph initialed after each numbered item and signed his name at the bottom of the agreement. According to Robin, Joseph agreed the foregoing terms were the basis on which a judgment of dissolution would be entered.

In 1995, Joseph sought to finalize the dissolution by entry of a default judgment and gave notice to Robin of his intent. Joseph's initial request for a default judgment either was not filed, or otherwise was not signed and entered by the court. It included as an attachment a "Spousal Support Order" stating that Joseph's net monthly disposable income was $3,400 and Robin's was $0.00, and that Joseph was required to pay Robin $1,000 per month in spousal support until December 15, 2001. Consistent with their written agreement, Robin handwrote on the proposed order, "Please change spousal support to $600.00 a month." With the amendment, Robin signed the proposed support order on July 4, 1995.

The default judgment ultimately entered by the court included a spousal support order modified to reflect the foregoing, and included a one-page attachment that Robin also signed on July 4, 1995, and which Joseph had previously signed on December 11, 1994, stating: "Petitioner and Respondent each acknowledge receipt from the other of the <u>Preliminary</u> and <u>Final</u> **Declarations of Disclosure** and all attachments." (Original underlining and bold typeface.)

4

Key to the parties' contentions below and on appeal, the attachment also included the following language: "There are no community or quasi-community assets, community debts, or retirement benefits *to be disposed of by the court*. This matter may proceed on the default or uncontested calendar and before a pro tem judge. The parties waive their rights to notice of trial, a statement of decision, to move for a new trial, and to appeal." (Italics added.)

The court entered the judgment of dissolution on August 17, 1995, with the above-noted attachments incorporated into the judgment.

The parties subsequently quitclaimed their two parcels of real property to each other as contemplated in their written agreement, except that, as Joseph notes, they included their two adult children in the intrafamily transfers. That is, Joseph quitclaimed the Lowell property jointly to Robin and their son, Steven. Robin, similarly, transferred the Sycamore residence jointly to Joseph and their daughter, Aimee.

In 2018, on turning 65 years old, which Robin believed was her "retirement age" when she would be "eligible to receive payments" under Joseph's pension, Robin contacted the pension plan department of Joseph's former employer. The plan administrator requested a copy of the divorce decree. Robin returned the document along with a copy of the handwritten agreement Joseph had signed. She received a response stating the pension plan's counsel reviewed the judgment and concluded "that as of this date, no documents have been received which award any interest to you. However, since the Judgment does not show any form of property division, you would be free to reopen the dissolution proceeding and secure any award of community property interest."

Robin then filed in the superior court her request for an order (RFO) for division of the pension as an omitted or undivided community property asset pursuant to section 2556. She also requested her attorney fees, costs, sanctions, an accounting of pension disbursals to date, and reimbursement of her share thereof, if any, with interest.

5

Joseph opposed the request to divide the pension or, in the alternative, argued that any division should be prospective only. His supporting declaration stated: "I have read the undated hand written [*sic*] note attached to the moving papers. It is my recollection that this was a discussion that took place early on in the settlement discussion and that we moved on from that position with the execution of the Judgment."

Joseph further attested, "Once the Judgment [was] completed we signed all the necessary real estate transfer documents. *We agreed* that all other property and debts [*sic*] we divided by virtue of whose name appeared on the asset or debt kept that items [*sic*] and that the other items of personal property remained with the party who had possession of the items. [¶] The judgment recited that there was no community property because *we had agreed* all other assets were divided in place so to speak." (Italics added.)

Responding to Robin's contention in her RFO that Joseph "said he would make [their handwritten agreement] part of the judgment," Joseph claimed, "The reason why nothing else was added [to the divorce judgment] was because we agreed that all other assets and debts were to be divided [*sic*: by?] our keeping the pensions, IRA's, other accounts in our names and personal property in our possession. This method [w]as a simple and direct solution."

Joseph reiterated in his declaration his position that the divorce decree specified the couple had no community property: "Our judgment specifically recited that we had no community property for a good reason . . . . We believed we had divided it!" (Original ellipses.) Joseph also added this: "The informality of this understanding is real and evidenced by the 23 plus years of calm since our dissolution was finalized."

In her RFO declaration Robin described her state of mind leading up to, in her view, the parties' mutual understanding that their written agreement regarding assets was part-and-parcel of the divorce decree: "At the time of our separation, I was severely depressed. I just wanted to be a mother and wife. I didn't work outside of the home and

6

didn't have an advanced education or advanced work skills. I was afraid and didn't care if I lived or died. My life was falling apart and I was in a deep dark tunnel. Petitioner [Joseph] took advantage of my state of mind and always insinuated that we could get back together." She concluded with this: "Petitioner gave me [*sic*: back?] sign the [written agreement she prepared] and said he would make that part of the Judgment."

Joseph insisted in his declaration that *his* alleged understanding of their agreement regarding assets informed the backdrop of their dissolution decree and was incorporated therein. He asserted the couple's understanding—including as to the pension—was mutual, referring to it as "Our thought" regarding the "Quid Pro Quo" of their agreed-upon property division: "The real estate distributed represented a[n] unequal division [because] the property awarded to Robin was much more valuable than the property awarded to me and was close to being paid off. [¶] Our thought was that I would pay support until the house was paid off and then she would be in a better position to support herself by renting out the property. [¶] This allocation would also eliminate any inequity from my receiving my pension."

Joseph further suggested in his opposition to Robin's RFO that he believed she received "communications" from the pension plan in 2003 confirming that the "plan was [his]." He submitted with his declaration a copy of his own August 2003 correspondence with counsel for the pension plan's trust fund. In the letter, counsel for the fund confirmed receiving the copy of the divorce decree Joseph sent and observed, "The Judgment of Dissolution provides that there is no community property or retirement benefits to be divided." Counsel then opined, "Accordingly, your pension benefits in the . . . Defined Benefit Plan . . . and Defined Contribution Plan are your sole and separate property and will be paid to you upon application and satisfaction of the eligibility criteria therefor." Joseph's declaration also noted he "served a subpoena on the plan and hopefully today, 16 years later, we can see any communications with Robin"; no such communication was produced.

7

Joseph closed his opposition by invoking laches: "The unfortunate thing was that we prepared our disclosures and over time, I lost the Schedule of Assets and Debts associated with the disclosures. I am certain that the disclosures identified my pension benefit and the other assets we divided. [¶] . . . [¶] I began to draw my pension in 2004 and here comes the Respondent today requesting to undo the transaction that was put in place over 23 years ago. [¶] Everything *that we agreed to* was done. The real properties were transferred by deed and I started to receive my pension after disclosing the dissolution to the plan who approved the full benefit to me." (Italics added.)

Joseph added, "There has not been one peep from Robin about the other assets and debts divided or of a[n] unequal division. Robin can't be allowed to selectively choose what she wants. [¶] In fact, Respondent has substantially benefitted from the asset allocation by receiving the more valuable parcel of real estate. [¶] At this point, I would like the Court to deny the relief requested and to give us the benefit of the bargain we made in 1995."

At the hearing on Robin's motion, the trial court made the following initial observations: "The court has a motion to address the pension that was not adjudicated in a judgment or it's alleged it's not adjudicated in the judgment . . . . [¶] . . . [¶] I am aware based upon the filings that there was sort of this catch-all phrase in the judgment [that] there are no community or quasi community assets, community debts or retirement benefits to be disposed of by the court. [¶] And so then the question becomes, and it appears at the time, [that] Ms. Williams signed the document, you know, I guess arguably knowing that the pension existed or was at issue; so therefore th[e] argument could be made that the clause, that clause adjudicated the pension."

The court adopted this argument as the basis for its tentative ruling to deny Robin's motion and noted "if . . . the pension ha[s] been adjudicated" in the divorce judgment, "then there isn't [section] 2556 release—relief available. [¶] There could be

8

relief sought under Family Code section 2122 for any alleged mistake or fraud, but the court does not have anything regarding Family Code section 2122 before it at this time."

After hearing argument from the parties but receiving no evidence on the issue, the trial court affirmed its tentative ruling. Referring to the clause in the marital dissolution judgment which stated there were no community assets "to be disposed of by the court," the trial court reasoned, "It seems that this agreement captured . . . sort of in the negative, [that the pension] was adjudicated by indication in the signature by both parties that there were no community assets. Or quasi community assets. Signature, done and done. [¶] In the negative, if there is an asset out there, this document says it's not a community asset. That's why my tentative remains." The court acknowledged, "I could see there could be an argument. I'm not making findings. I'm not going to wade in on that. I see there could be arguments made under Family Code section 2122."

The trial court entered its ruling denying Robin's motion under section 2556; she now appeals.

## DISCUSSION

Robin challenges the trial court's conclusion that the clause in the couple's divorce decree stating there were no community assets "to be disposed of by the court" as a matter of law, in the court's words, "adjudicated the pension."

In essence, the issue is whether the clause gave the default judgment res judicata or collateral estoppel effect on the issue of the parties' pension rights. "Whether the doctrine of res judicata applies in a particular case is a question of law which we review de novo." (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 228.) Res judicata, or claim preclusion, "'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.'" (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) More precisely here, collateral estoppel applies to prevent "relitigation of previously decided

9

issues" (*id*. at p. 824), and is found "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party" (*id.* at p. 825). Both concepts require a final adjudication on the merits.

In the seminal case regarding division of omitted assets, the Supreme Court held that "'under settled principles of California community property law, property which is not mentioned in the pleadings as community property is left unadjudicated by [a] decree of divorce.'"" (*Henn v. Henn* (1980) 26 Cal.3d 323, 330 (*Henn*), superseded by statute as stated in *In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492 (*Thorne & Raccina*).) "This rule applies to partial divisions of community property as well as divorces unaccompanied by any property adjudication whatsoever." (*Henn*, at p. 330; see, e.g., *In re Marriage of Huntley* (2017) 10 Cal.App.5th 1053, 1059 (*IRMO Huntley* or *Huntley*).)

In some jurisdictions, "adjudication" is held to occur simply where "the marital asset in th[e] case was disclosed and discussed during the divorce proceedings and the parties had a fair opportunity to litigate its division." (*Doan v. Wilkerson* (Nev. 2014) 327 P.3d 498, 502 (*Doan*) [distinguishing cases where "property at issue was unadjudicated when it simply had been omitted *from consideration* by the parties," italics added], superseded by statute on other grounds as recognized in *Kilgore v. Kilgore* (Nev. 2019) 499 P.3d 843, 849.) In California, in contrast, "discussion" or "consideration" is not enough; the "mere mention" of a pension benefit is "not an adjudication of property rights" (*Brunson v. Brunson* (1985) 168 Cal.App.3d 786, 788), even when referenced in the judgment (*In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667, 692 ["'The mere mention of an asset in the judgment is not controlling'"]). Instead, "'the crucial question is whether the benefits were actually litigated and divided in the previous proceeding.'" (*Thorne & Raccina*, *supra*, 203 Cal.App.4th at p. 501.)

10

*Doan* is nevertheless instructive in its discussion of California statutory law—section 2556—as distinct from Nevada law at the time. There, the trial court "found that there was full disclosure" of the husband's Federal Aviation Administration (FAA) pension in the couple's divorce proceedings years earlier and that "retirement benefits were considered in determining the length of alimony." (*Doan*, *supra*, 327 P.3d at p. 502.) These findings, together with the fact that the pension was mentioned several times in the record, including in the wife's pretrial memorandum as property subject to division, were sufficient for the reviewing court to find the pension had been "adjudicated" in the divorce proceedings, though not referenced in the divorce decree. The pension therefore could not be relitigated by the wife as a marital asset allegedly omitted from the decree. (*Ibid.*)

*Doan* held under Nevada law that "[t]he fact that the FAA retirement benefit was not mentioned in the decree is not an exceptional circumstance justifying equitable relief." (*Doan*, *supra*, 327 P.3d at p. 503.) *Doan* observed, "It is up to the Legislature whether to create an action, or permit continuing jurisdiction, for partitioning property that was merely left out of the divorce decree. California has done so: 'A party may file a postjudgment motion . . . in order to obtain adjudication of any community estate asset or liability omitted . . . by the judgment.'" (*Id.* at p. 503.)

Here, Robin sought division of Joseph's pension—unmentioned in their default judgment divorce decree—under section 2556: "In a proceeding for dissolution of marriage, for nullity of marriage, or for legal separation of the parties, *the court has continuing jurisdiction* to award community estate assets or community estate liabilities to the parties *that have <u>not</u> been previously adjudicated by a judgment in the proceeding*. A party may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community estate asset or liability *omitted or not adjudicated* by the judgment. In these cases, the court shall equally divide the *omitted or unadjudicated* community estate asset or liability, unless the court finds upon good cause

11

shown that the interests of justice require an unequal division of the asset or liability."
(Italics and underscoring added.)

We interpret statutory provisions de novo, including whether the statute affords relief in the given circumstances. (See *Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1072.) We similarly interpret the written terms of a judgment de novo. (*Fox v. Fox* (1954) 42 Cal.2d 49, 52.)

"Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretations of contracts generally." (*In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439.) "When the language . . . is clear, explicit, and unequivocal, and there is no ambiguity, the court will enforce the express language." (*Id.* at p. 1440.) If, on the other hand, the language is ambiguous—i.e., susceptible to more than one reasonable interpretation—we may look to extrinsic evidence to determine the parties' intent. (*Id.* at p. 1439.) In such a context, extrinsic evidence is admissible so long as "it supports a meaning to which the language is reasonably susceptible." (*Ibid.*)

*IRMO Huntley* provides several useful guidelines as we determine whether Robin was entitled to proceed under section 2556. First, "[i]n providing courts with continuing jurisdiction, section 2556 imposes no time limit on former spouses to seek to adjudicate omitted or unadjudicated community property after a dissolution judgment was entered." (*IRMO Huntley*, *supra*, 10 Cal.App.5th at p. 1060.)

Second, section 2556 "applies even when former spouses were aware of the community property at the time the dissolution judgment was entered." (*Huntley*, *supra*, 10 Cal.App.5th at p. 1060.) This rule follows because "'[r]egardless of whether the parties know of, or discuss, the vested pension, if the "court was not called upon to award it, and did not award it, as community property, separate property, or any property at all" [citation], then the pension is a missed asset subject to a postdissolution claim.'" (*Ibid.*) In other words, "adjudicate" means "[t]o rule on judicially." (Black's Law Dict. (11th ed.

12

2019) p. 52, col. 1.) Absent a judicial ruling, the asset is unadjudicated within the meaning of section 2556.

"In sum," *Huntley* explained, "section 2556 applies to community property not actually adjudicated in the previously entered dissolution judgment." (*Huntley*, *supra*, 10 Cal.App.5th at p. 1061.)

*Huntley* explained that the trial court there "erred in ruling [the wife] was required to move to set aside the default judgment before availing herself of the continuing jurisdiction provided by section 2556 for division of unadjudicated community property. The dissolution judgment did not divide—or even mention—any community property. Consequently, the parties' community property remained ""subject to future litigation.""" (*Huntley*, *supra*, 10 Cal.App.5th at p. 1061.)

In *Huntley*, the wife had "handled the finances during the marriage," and while it is unclear whether Robin did so here, it is undisputed she was aware of Joseph's pension at the time of the dissolution proceedings. (See *Huntley*, *supra*, 10 Cal.App.5th at p. 1061.) Nevertheless, though a spouse at the time of dissolution "was aware of the very community property she [later] sought to have divided under section 2556, her knowledge did not provide a basis for denying her motion." (*Ibid.*)

While Joseph in his declaration viewed "the 23 plus years of calm since our dissolution was finalized" as evidence of a "real" agreement that was binding despite its "informality," *Huntley* rejected the notion that an informal agreement executed outside of a divorce decree had res judicata status which precluded section 2556 relief. Specifically, the husband there argued "the trial court correctly determined that, even if cognizable, [the wife's] motion was properly denied because all of the community property had actually been divided by the parties according to their informal agreement." (*Huntley*, *supra*, 10 Cal.App.5th at p. 1061.)

But, as *Huntley* explained, in marital dissolution proceedings, "to be valid, even an agreement to divide community property *equally* must comply with

13

section 2550." (*Huntley*, *supra*, 10 Cal.App.5th at p. 1062, italics added.) A fortiori, unequal divisions must also, under section 2550, "either be written or orally stated in open court" and that requirement must be "strictly construed." (*Ibid.*) As *Huntley* observed, these requirements "promote the policy of encouraging the parties to arrive at an out-of-court resolution containing sufficiently definite terms to be enforced by the court without further litigation. Requiring the parties' settlement agreement to be committed to writing or recited in court, as mandated by . . . section 2550, prevents the risk of the court enforcing an agreement that never was made."[2] (*Huntley*, at p. 1062.)

In *Huntley*, the "judgment of dissolution of marriage did not include any property orders," but the trial court found the wife could not proceed under section 2556 because, outside of the judgment, "the parties had divided all of their community property and these assets were 'now owned by the parties based on their actual title.'" (*Huntley*, *supra*, 10 Cal.App.5th at p. 1062.) The appellate court reversed, because "this later finding does not address or remedy the absence of any division of community property in the judgment. For this reason, the trial court did not fulfill its duty to divide the parties' community property as required by section 2550 and under the continuing jurisdiction provided by section 2556." (*Ibid.*)

Joseph attempts to distinguish *Huntley* on grounds that this default judgment included a property order. He argues the clause in the judgment specifying that there was no community property "to be disposed of by the court" had the effect of ratifying and stamping with court approval his version of an unspecified agreement between the couple to divide their community property.

---

[2] Section 2550 provides: "*Except upon the written agreement of the parties, or on oral stipulation of the parties in open court*, or as otherwise provided in this division, in a proceeding for dissolution of marriage or for legal separation of the parties, the court shall, either in its judgment of dissolution of the marriage . . . or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community estate of the parties equally." (Italics added.)

We cannot agree for two reasons.  First, the supposed agreement is not set forth in or referenced by the judgment.  As discussed in *Huntley*, assets claimed to be divided by an informal agreement but omitted or unadjudicated by the judgment remain within the statute's scope.  Pursuant to section 2556, "even where there is an ostensible, final and complete judgment the parties may nonetheless litigate issues of property rights that are not expressly adjudicated by that judgment."  (*In re Marriage of Dunmore* (1996) 45 Cal.App.4th 1372, 1379, fn. 6.)

The judgment does not say, as Joseph claims, that the couple had no community property.  It says that there were no community assets for disposition by the court.  We cannot convert this expressly requested nondisposition of assets into court adjudication of assets.  The concepts are contradictory.  It is not enough that the parties discussed or litigated a community asset or debt if the judgment itself did not finally divide or otherwise allocate the asset or debt.  "'"[T]he crucial question is whether the [asset or debt was] actually litigated *and divided* in the previous proceeding.'"'"  (*In re Marriage of Georgiou & Leslie* (2013) 218 Cal.App.4th 561, 575, italics added.)

Second, to the extent Joseph suggests the contested clause in the judgment—"[t]here are no community or quasi-community assets, community debts, or retirement benefits to be disposed of by the court"—amounted to a marital settlement agreement which transmuted any community property into separate property, it was inadequate to do so as a matter of law.  Section 2550's "strictly construed" requirement that the terms on which divorcing spouses divide their property must "either be written or orally stated in open court" was not met here, since no division was included in the judgment.  (*Huntley*, *supra*, 10 Cal.App.5th at p. 1062.)

Nor was the clause adequate to memorialize, as Joseph claims, an informal division of property preceding the judgment.  "Fundamentally, the validity and enforceability of such 'transmutation agreements' turns on compliance with applicable transmutation formalities . . . ."  (Hogoboom & King, Cal. Practice Guide:  Family Law

15

(The Rutter Group 2022) ¶ 9:256, p. 9-115 (hereafter Rutter).) Except for insubstantial gifts between spouses of clothing, jewelry and the like, a transmutation of real or personal property on or after January 1, 1985, is valid only if made "in writing by an *express* declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." (§ 852, subds. (a), (c), italics added; see, e.g., *Marriage of Valli* (2014) 58 Cal.4th 1396, 1400-1401; Rutter, *supra*, ¶ 9:257, p. 9-115.) The adversely affected spouse's "'express declaration'" must contain language stating the characterization or ownership of the property is being changed. (*Estate of MacDonald* (1990) 51 Cal.3d 262, 272.) The intent to transmute the property must be clear and unambiguous, without resorting to extrinsic evidence. (*Ibid.*)

Like section 2550, section 852 requires sufficiently definite terms to prevent the risk of a court enforcing an agreement that was never made. (See *Huntley*, *supra*, 10 Cal.App.5th at p. 1062.) Since it made no reference to Joseph's pension, the default judgment clause on which he relies changed nothing regarding ownership or characterization of the pension. The asset therefore was omitted or unadjudicated within the meaning of section 2556, and the trial court erred in concluding otherwise.

On remand, pursuant to the terms of section 2556, the trial court must equally divide the pension "unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset or liability." In making this determination, the court should evaluate Joseph's claim that the pension should be his alone because the parties divided their other assets unequally. The court must also evaluate Robin's claim that they agreed in writing to divide it equally, which Joseph presumably thought at that time was fair. Neither party is constrained by laches to "*bar* §2556 relief." (Rutter, *supra*, ¶ 8:1516, p. 8-533, original italics.) Instead, the court must exercise its equitable judgment under section 2556 in the first instance. (See *Lakkees v. Superior Court* (1990) 222 Cal.App.3d 531, 540, fn. 5 [although former Civil Code section 4353, predecessor to section 2556, did not authorize dismissal for delay in

16

prosecution, it did "allow[] the court to make equitable adjustments in dividing an asset"].)

## DISPOSITION

The trial court's order denying Robin's section 2556 petition is reversed. The matter is remanded for the trial court to conduct further proceedings consistent with this opinion, including making the necessary factual findings regarding the parties' intent in order to determine how to proceed under section 2556. The trial court may receive additional evidence and conduct further proceedings in its discretion to make the necessary findings. Appellant is entitled to her costs on appeal.


GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.