Filed 7/27/23  Marriage of Strulyov CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of EKATERINA and EUGENE STRULYOV. | H050115<br>(Santa Clara County<br>Super. Ct. No. 19FL001660) |
| EKATERINA STRULYOV,<br><br>        Respondent,<br><br>v.<br><br>EUGENE STRULYOV,<br><br>        Appellant. | |

Appellant Eugene Strulyov (Eugene) and respondent Ekaterina Strulyov (Katia) entered into a stipulated judgment of dissolution of marriage.[1]  Representing himself, Eugene appeals from postjudgment orders.  Eugene contends the trial court abused its discretion by (1) refusing to set aside a postjudgment stipulation and order that required him to pay for one-half of his daughter's private school tuition, (2) granting Katia's motion to determine Google stock is an omitted asset that should be divided, and (3) imposing $60,000 in sanctions against him while declining to impose sanctions against Katia.  For the reasons explained below, we reject Eugene's first and third contentions.

---

[1] For clarity and consistency with the parties' briefing, we refer to them by first name.

We affirm the trial court's conclusion that the Google stock is an omitted asset but reverse the order on its division and remand for further consideration.

## I. FACTS AND PROCEDURAL BACKGROUND

A. *Marriage and Stipulated Judgment of Dissolution*

Eugene and Katia married in 2010 and separated in 2019. They have one child (daughter), born in 2013. Katia petitioned for dissolution of their marriage in Santa Clara County Superior Court, and they engaged in private mediation in April and May 2019.

In May 2019, Katia and Eugene executed a stipulated judgment of dissolution of marriage. That same day, Katia and Eugene exchanged unsigned preliminary declarations of disclosure about their finances (see Fam. Code, § 2104[2]). There were no attachments, including statements and required backup documentation, to their schedules of assets and debts.

In November 2019, the trial court entered the judgment of dissolution to which the parties had stipulated in May (2019 judgment). The 2019 judgment addressed a number of issues, including custody, spousal support, maintenance of health insurance for daughter, division of assets, child support and additional child support in the form of expenses, including for daughter's education. It provided that Eugene and Katia would each be responsible for one-half of "all educational costs" for daughter through her high school graduation. It did not specify the school daughter would attend.

Regarding the division of assets, the 2019 judgment listed property, including financial accounts. It awarded Katia (among other property) a one-half interest in "Charles Schwab Investment account no. -6350" but did not specify the assets in the account or provide a value for it.

---

[2] Unspecified statutory references are to the Family Code.

The 2019 judgment also attached a DissoMaster[3] report, which listed Katia's monthly wages and salary as $4,389.

*B. Postjudgment Proceedings, Including 2020 Stipulation and Order*

Following entry of the 2019 judgment, Eugene and Katia disputed a number of issues, including child and spousal support and payment of daughter's private school tuition. In January 2020 Eugene and Katia unsuccessfully engaged in mediation. In March 2020 they reached a settlement in which each was represented by counsel. At the time of the settlement negotiations, Katia was earning $11,249 per month (she had started a new job in February 2020) but did not disclose that fact, leading Eugene to believe her income had not changed when in fact her salary had nearly tripled.[4]

In April 2020 the trial court issued an order pursuant to the stipulation the parties had reached in March (2020 stipulation and order). The stipulation and order addressed a variety of issues, including child support, spousal support and private school tuition. Pursuant to the stipulation and order, the parties agreed that daughter "shall continue to attend private school at [named school] through eighth grade or until further agreement of the parties[] or order of the court." They agreed to each pay one-half of the tuition costs, and Eugene agreed to reimburse Katia for one-half of the tuition costs she had advanced.

On August 17, 2020, after learning of Katia's previously undisclosed salary increase, Eugene filed a request for order seeking vacatur of the 2020 stipulation and order based on fraud and concealment (August 2020 RFO). He also requested the court order Katia to reimburse him for all monies he had paid for private school tuition. Additionally, he requested that the court recalculate child support based on Katia's true

---

[3] DissoMaster is a computer software program widely used by courts and the family law bar in setting child and spousal support pursuant to the statewide uniform guidelines set by the Family Code and local rules. (See *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 5, & fn. 3.)

[4] The trial court made this factual finding, which Katia does not challenge on appeal, in its April 2022 findings and orders after hearing.

income and that it terminate spousal support. Eugene sought an unspecified amount of sanctions and attorney fees and costs pursuant to section 271 and Code of Civil Procedure section 128.5 "to include $5,000 paid by [Eugene] to Mathew Rudy [his former attorney], and all fees paid to the Law Office of Joseph Camenzind to file and prosecute this Request for Order, and reimbursement of all expenses paid based on fraudulent conduct."

Eugene submitted a declaration asserting he and Katia had agreed when they separated in April 2019 to send daughter to a public school and they had "carefully selected [daughter]'s public school together." He stated Katia decided in July 2019 to send daughter to private school, and he had refused to pay invoices for 50 percent of the monthly cost. Eugene declared that Katia had failed to disclose she had received a significant pay increase and was earning significantly more income than she had previously disclosed. He argued that had he known Katia's true income, he would not have agreed in the 2020 stipulation to pay for one-half of the costs of daughter's private school.

On March 8, 2021, Katia filed a request for order seeking determination and division of omitted assets and sanctions (March 2021 RFO). She asserted Eugene had failed to disclose community assets, including restricted stock units he received from his former employer Google LLC (hereafter Google stocks).

In support of her March 2021 RFO, Katia declared that Eugene had been employed by Google throughout their marriage and she believed he had received Google stocks. She stated that, "[p]rior to engaging the help of the mediator," Eugene had told her that he had "certain Google stocks and investment which are both held in Schwab accounts," but his schedule of assets and debts listed only one Schwab account (ending in 6350). Based on this disclosure, only that Schwab account was divided in the judgment. Only after receiving discovery later in the litigation did Katia discover that Eugene had a "separate Schwab account containing Google stocks" (Schwab GOOG account), which had not been divided. She attached as exhibits to her declaration a copy of Eugene's

4

schedule of assets and debts, his paystubs from Google, and a copy of an account statement of the separate Schwab account containing the Google stocks that is titled "GOOG."

Katia's declaration included a request for sanctions and detailed actions by Eugene over the past year that she contended were sanctionable. That conduct included failing to divide the Google stocks, unilaterally choosing to withhold support and payments for additional child support expenses, and removing daughter from his health insurance.

Eugene opposed Katia's March 2021 RFO. In support of his opposition, he filed a declaration stating that he has two Charles Schwab accounts: A Schwab Equity Awards account, into which his restricted stock units (i.e., his Google shares) vest, and a Schwab Brokerage account. In April 2019, Eugene sent Katia an e-mail describing his financial assets, which listed the two Schwab accounts as separate line items and indicated they contained $161,107.95 and $43,457.40, respectively. The Judicial Council Forms, form FL-142, he exchanged with Katia contained a single line-item for "Schwab," and listed its value as "$205,622.38."

Eugene declared that the amount listed in the Judicial Council Forms, form FL-142, was slightly higher than the figures in the April e-mail because the value of the stocks had slightly increased. Eugene attached to his declaration account statements for the Schwab Equity Awards account for the period April 1, 2019, through June 30, 2019, and the Schwab Brokerage account (ending in 6350) for April 1 through April 30, 2019. The Schwab Equity Awards statement listed the closing value of the Google (Alphabet)[5] stock in the account as $49,721.86. The Schwab Brokerage account listed the closing value as $153,858.47. According to the account statement, the brokerage account contained shares of AT&T, Facebook, Ford Motor, Honda Motor, and Micron Technology. Eugene's declaration asserted the Schwab Equity Account had increased in

---

[5] The "Account Summary" listed the account as "GOOG." Under "Account Statement" was the heading "Alphabet Inc Class C."

value because additional Google stocks vested on April 29 and May 30; the Schwab Brokerage account had decreased because Eugene had transferred $10,000 to Katia's checking account.

Eugene's declaration stated that Katia had been overpaid because the Google shares that vested on May 30, 2019, should not have been considered marital property. It further asserted that the marital property division was based on the $205,622.38 he had entered on the Judicial Council Forms, form FL-142, which included the value from both the Schwab Equity and Schwab Brokerage accounts. Eugene's trial brief contended that the e-mails and account statements attached to his declaration demonstrated that the parties had equally divided the community property, including the Google stock.

*C. March 2022 Trial and Subsequent Filings*

A trial, at which both Eugene and Katia were represented by counsel, occurred on March 8 and 9, 2022. The record on appeal does not contain a transcript or settled statement of the trial proceedings.

The trial addressed a number of pending motions, including Katia's March 2021 RFO related to the Google stocks, her requests for attorney fees and sanctions pursuant to section 721, and Eugene's August 2020 RFO seeking vacatur of the April 2020 stipulation and order.

The court heard testimony from both Eugene and Katia, and it admitted exhibits into evidence.

On March 23, 2022, following the trial, Katia's then-attorney (Golnesa Monazamfar) filed a declaration in support of Katia's request for attorney fees and sanctions against Eugene. The declaration explained the grounds for the $109,737 in sanctions sought. Monazamfar stated that the trial court had not yet ordered attorney fees in the family law case and there were several requests for fees and sanctions that had not yet been adjudicated.

6

Monazamfar declared that Katia had sought to settle issues with Eugene, but Eugene had directly frustrated settlement in a number of ways. She also asserted Eugene had omitted assets, forcing Katia to file a motion with the court.

In the declaration, Monazamfar addressed various categories of Eugene's misconduct and the basis for and amount of sanctions requested. As to Eugene's conduct related to settlement negotiations, Monazamfar stated that Katia incurred attorney fees totaling $10,745 pursuant to section 271. Monazamfar declared Katia had attempted to settle with Eugene "on every single issue subject to litigation" but that all "settlement efforts have been futile and resulted in litigation." For instance, Eugene and Katia had reached an agreement at one settlement conference but "immediately after the hearing and after the presiding officer sent the stipulation summary recap [Eugene]'s counsel informed everyone[] that [Eugene] had changed his mind." [6]

Monazamfar's declaration appended a number of exhibits, including court orders and billing statements from Katia's attorneys (Monazamfar and Rod Firoozye). Firoozye's invoices totaled $77,370 and Monazamfar's invoices totaled $92,292.50, which reflected all the attorney fees and costs Katia had incurred through March 22,

---

[6] Additionally, the Monazamfar declaration listed attorney fees and costs incurred by Katia related to Eugene's omission of assets ($29,785 and "in accordance with Family Code sections 271, 1101, 2100 et seq[,] and . . . Code of Civil Procedure section 3294 for breach of his obligations"); Eugene's violation of court orders requiring him to maintain daughter on his health insurance ($2,637.50 under section 271); production of documents and communications related to Eugene obtaining life insurance naming Katia as a beneficiary and Eugene's violation of court orders ($2,205 under section 271); custody issues ($20,605 in attorney fees under section 271 and $10,817 for the evaluator and reconnection therapist); a request for continuance of the trial following Katia's father's death after Eugene refused her request to reschedule the trial ($1,610 under section 271); Eugene's untimely and unsuccessful motion for reconsideration ($1,357.50 under Code of Civil Procedure sections 1008(d), 128.5, and 128.7, and an additional $7,000 under section 271); disqualifying Eugene's prior counsel, Joe Camenzind ($5,790 under section 271); and an assortment of "other issues" including dividing an E*Trade account, enforcing Eugene's obligation to pay for daughter's educational costs and his payment of tuition, and other work on issues requiring litigation ($17,185 under section 271).

7

2022. The declaration asserted that Katia requested attorney fees and costs and sanctions "at a minimum in the amount of $109,737" against Eugene for his conduct in the litigation.

On March 23, 2022, Eugene filed a declaration from his then-attorney Dale Chen in support of Eugene's request for attorney fees under section 271 and seeking a substantial amount of attorney fees and costs that were billed by Chen and by Eugene's prior counsel.

On March 28, 2022, the trial court issued a written statement of decision. The court decided Katia was entitled to sanctions but did not set an amount. The court found Eugene had frustrated the court's policy of promoting settlement and failed to adhere to court orders, including by not listing Katia as a beneficiary on his life insurance policy. It found Eugene had engaged in other conduct that frustrated settlement or resulted in an increase in litigation.

D. *April 2022 Findings and Orders After Hearing*

On April 8, 2022, the trial court issued the findings and orders that are the subject of this appeal. The challenged court orders address Eugene's request to set aside the 2020 stipulation and order as to daughter's tuition, the division of the Google stocks, and the imposition of sanctions on Eugene but not on Katia (collectively, April 8, 2022 orders after hearing).

As to daughter's schooling, the trial court found daughter had attended private kindergarten prior to the divorce, was enrolled in private school for first grade, and the judgment provided the parties would equally share education costs. The court found that Eugene had refused to pay his share of the private school tuition, Katia obtained counsel to enforce the terms, and thereafter the parties had entered into the stipulation that was the subject of the 2020 stipulation and order.

Regarding Eugene's request to set aside the 2020 stipulation and order based on mistake or fraud, the court declined to vacate the order but found Katia had failed to

8

disclose her increased income. The court concluded this failure to disclose warranted a modification of child support. However, with respect to his request that the court terminate spousal support, the court noted that Eugene's reliance on a DissoMaster calculation was improper, and there was no evidence or testimony regarding the marital standard of living. The court denied Eugene's request to set aside the spousal support provision of the 2020 stipulation and order.

Addressing Eugene's request to set aside the "education provision" in the stipulation and order based on his claim he had "traded" spousal support for educational expenses, the court found it had no evidence of the value of Katia's agreement to terminate spousal support. Moreover, the court found that the 2019 judgment obligated Eugene to pay for one-half of daughter's education expenses. The court rejected Eugene's claim that he had not actually agreed to pay for daughter's tuition as part of her educational costs. The court noted the judgment's language referred to "all educational costs incurred on behalf of" daughter and contained no limiting language. The court decided that "all educational costs" reasonably included tuition. Prior to the entry of judgment, the court found Katia and Eugene had looked at private schools for daughter, had selected the particular private school, and had paid a deposit. The court found Eugene did not unenroll daughter from private school, did not provide evidence that he attempted to do so (or that he asked Katia to unenroll daughter), and that "[a]t the time the parties agreed to split 'all educational costs' [daughter] was enrolled in private school." The court concluded that both the 2019 judgment and 2020 stipulation and order obligated Eugene to pay one-half of daughter's private school tuition.

As to the division of the Google stocks, the trial court observed that Eugene's schedule of assets and debts listed only one Schwab account, with no account number associated with it. The schedule did not include any attachments or required documentation. The court found the judgment was silent as to the account in which the Google stocks were located and it appeared that Katia had not received any Google stock.

9

The court granted Katia's request for division of the Google stock and awarded her one-half of the shares in the account. The trial court did not directly address Eugene's contention that the parties had already equally divided the community property, or the evidence that the figure Eugene had disclosed with respect to the Schwab account and from which Eugene and Katia had divided the marital property included the value of the Google shares.

The trial court addressed both Eugene's and Katia's request for an award of attorney fees as sanctions. It ordered Eugene to pay $60,000 in attorney fees "as a sanction under Family Code [section] 271 and related sanctions." The trial court did not specify any statutory provision other than section 271; elsewhere in its April 2022 order it quoted the provisions of section 271 and case law applying that provision.

As a basis for the imposition of sanctions, the trial court found Eugene had on multiple occasions frustrated settlement in the family law litigation. The court's order set out a number of examples. It found Eugene had admitted at trial that he had canceled daughter's health insurance and daughter still did not have any coverage through him, despite a judgment and subsequent orders requiring him to maintain health insurance for daughter. Eugene had also forced Katia to incur other additional expenses in the litigation. For example, Katia retained counsel to serve a document request to obtain a copy of Eugene's life insurance policy that confirmed Eugene had not complied with a court order to name Katia as a beneficiary and to effectuate a division of Eugene's E*Trade Roth IRA, as ordered by the court. Eugene had also refused to agree to continue the trial when Katia's father passed away. The court further noted Eugene had filed an untimely motion for reconsideration, which the trial court denied, and had forced Katia's counsel to move to disqualify Eugene's prior attorney upon discovery of a conflict of interest. The court also found Eugene's conduct related to the Google stocks sanctionable because he had failed to divide the Google stocks and asserted "throughout [t]rial and even in his closing arguments" that he was entitled to "divide assets outside the

10

terms of the [j]udgment" in a form of self-help.  The court concluded that "[t]his conduct has frustrated settlement and led to the increase in fees by Katia."  The trial court also found that Eugene had or was reasonably likely to have the ability to pay and the sanction awarded did not impose an unreasonable financial burden.

The trial court denied Eugene's request that it impose sanctions on Katia.

Eugene timely appealed from the April 8, 2022 orders after trial.

## II.  DISCUSSION

Eugene challenges on a number of grounds the trial court's April 2022 posthearing orders.  First, he contends the trial court abused its discretion in denying his request to set aside the 2020 stipulation and order as it related to daughter's private school tuition.  Second, he asserts the court erred as a matter of law in characterizing Eugene's Google stock as an omitted asset and ordering it divided.  Third, he contends the court abused its discretion in awarding Katia $60,000 in sanctions under section 271.  Additionally, Eugene's briefing asserts the trial court erred by denying his request for sanctions against Katia.  Eugene also objects to procedural events and delays that occurred in the trial court, some of which occurred after the orders that are the subject of this appeal.

Katia counters that all of Eugene's claims lack merit and furthermore asserts he has forfeited his contentions of error by failing to provide an adequate record that includes a transcript of the trial that preceded the orders that are the subject of this appeal.

We turn first to the scope of matters reviewable on appeal and basic principles of appellate review.  We then consider whether Eugene has demonstrated error by the trial court in the challenged orders.

A. *Appellate Record and Principles of Appellate Review*

It is "well established that 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' " (*Martinez v. Vaziri* (2016) 246 Cal.App.4th 373, 383.)  The proper route for a civil litigant, where the record is incomplete, is to bring a

11

motion to augment the record and attach the documents to the motion. (Cal. Rules of Court, rule 8.155(a)(2).) This court must hold a self-represented litigant to the same procedural rules as an attorney. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247 (*Nwosu*); accord *Martinez*, at p. 383.)

In his briefing on appeal, Eugene states he has "uploaded" documents to a Web site that appear to pertain to his motion for new trial that postdates his notice of appeal.[7] We decline to review or consider these documents based on the above principles and rules. Other than the documents included in the record on appeal and contained in the motion to augment that this court has already granted, we have not considered any additional documents from Eugene's Web site.[8]

"It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.] This rule reflects an 'essential distinction between the trial and the appellate court . . . that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law.' " (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.)

---

[7] We previously granted Eugene's unopposed renewed motion to augment the record on appeal with a number of documents, including the exhibits submitted by both parties to the trial court at the March 8 and 9, 2022 trial.

[8] Eugene states in his opening brief that if this court elects not to review the documents uploaded on his Web site, we can ignore the " 'New Trial' " section in his opening brief. Accordingly, we do not address his arguments related to his motion for new trial that he apparently filed after the April 2022 order that is the subject of this appeal. We also decline to address other criticisms related to procedural events and delays that occurred in the trial court, some of which occurred after the orders that are the subject of this appeal, and for which he supplies no discernable legal argument or claim of error. Finally, we do not consider facts and case history that relate to events that postdate the April 8, 2022 order after trial that is the subject of this appeal. These events are not properly before us in this appeal. (See *Soldate v. Fidelity National Financial, Inc.* (1998) 62 Cal.App.4th 1069, 1073.)

As appellant, Eugene bears the burden of demonstrating error. "To be successful on appeal, an appellant must be able to affirmatively demonstrate error on the record before the court." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822 (*Falcone & Fyke I*).) " ' " 'A judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " ' " (*Ibid.*)

Further, with respect to the challenged orders, Eugene has "an affirmative obligation to provide an adequate record so that we could assess whether the court abused its discretion." (*Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 259.) " 'The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) In particular, where no error is apparent on the face of the existing appellate record and the appellant elects to proceed without a reporter's transcript, the reviewing court presumes the judgment correct as to all evidentiary matters. (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992 (*Fain*); see also *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187 [failure to provide an adequate record on an issue requires the issue to be resolved against appellant].)

Even though he is self-represented, Eugene must present an adequate record demonstrating purported error by the trial court and must support any reference to a

matter in the record by a citation to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Nwosu*, *supra*, 122 Cal.App.4th at p. 1247.)[9]

Eugene's contentions in this appeal largely involve our review of factual determinations and discretionary rulings resolved against him by the trial court.[10] Eugene acknowledges that he has elected to proceed without a record of the oral proceedings from the two-day trial at which the trial court heard testimony and received exhibits into evidence. He concedes the trial was not reported and there is no indication he requested a suitable substitute, such as a settled statement.[11] (*Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574 ["A proper record includes a reporter's transcript or a settled statement of any hearing leading to the order being challenged on appeal."].) While the clerk's transcript and papers attached to Eugene's augmentation motion granted by this court contain a variety of filings and orders made throughout the action, including exhibits used at trial, we do not have a complete record of the arguments and testimony before the court at the March 8 and 9, 2022 trial.

Both parties were represented by counsel in the trial court, and nothing in the record supports an inference that the superior court was required to provide an official court reporter not privately retained by the parties. (See, e.g., Code Civ. Proc., § 269;

---

[9] Inasmuch as the factual assertions in Eugene's briefing are unsupported by record citations, we will disregard them. (See *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1267 ["plaintiffs make numerous factual assertions in their briefs without record citation" but "[w]e are entitled to disregard such unsupported factual assertions"].) For example, Eugene asserts he is unemployed but provides no record citation for that assertion.

[10] Eugene suggests we employ a de novo standard of review to his claims. He asserts that "courts have held that no transcript is required where an appeal presents a purely legal issue subject to de novo review." However, Eugene does not cite any relevant case law for this proposition. We will apply the appropriate standard of review to each of Eugene's claims.

[11] A settled statement is a summary of the trial court proceedings approved by the trial court, which an appellant may elect to use if the designated oral proceedings in the trial court were not reported by a court reporter. (Cal. Rules of Court, rule 8.137(b)(1).)

Cal. Rules of Court, rule 2.956; Super. Ct., Santa Clara County Gen. Court & Admin. Rules, rule 7.)[12] Eugene argues a settled statement "would be impossible due to distortion of [his] testimony," but we have no basis to analyze his assertion without a transcript of that testimony. We furthermore reject his conclusory and unsupported argument that a settled statement was otherwise impossible to procure in this case. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["[C]onclusory claims of error will fail."].)

Katia requests we decide Eugene has forfeited his claims based on the lack of reporter's transcript. While we reject this suggestion, the absence of a record of what transpired at trial undermines many of Eugene's arguments in this appeal.

B. *Order Denying Eugene's Request to Set Aside the Stipulation and Order*

Eugene contends the trial court erred by failing to set aside the 2020 stipulation and order requiring him to pay for daughter's private school tuition. He argues, as he did in the trial court, that the provision regarding payment of educational costs in the 2019 judgment was silent as to the type of school and therefore did not require him to pay for daughter's private school tuition.

### 1. Legal Principles and Standard of Review

"Section 2122 governs motions to set aside judgments in dissolution proceedings. Under this statute, there are six grounds to set aside a judgment: actual fraud, perjury, duress, mental incapacity, mistake, or failure to comply with the disclosure requirements. (§ 2122, subds. (a)–(f).)" (*In re Marriage of Binette* (2018) 24 Cal.App.5th 1119, 1125.) An order granting a motion to set aside a judgment under section 2122 is reviewed under an abuse of discretion standard. (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 682–683.)

The trial court's ruling on this issue turns in large part on its interpretation of the 2019 judgment and 2020 stipulation and order. " 'The meaning and effect of a judgment

---

[12] We observe that Eugene states in his briefing in this court that he has been able to engage a court reporter for at least one subsequent hearing in the trial court.

is determined according to the rules governing the interpretation of writings generally. [Citations.] " '[T]he entire document is to be taken by its four corners and construed as a whole to effectuate the obvious intention.' " [Citations.] " 'No particular part or clause in the judgment is to be seized upon and given the power to destroy the remainder if such effect can be avoided.' " [Citations.] [¶] Where an ambiguity exists, the court may examine the entire record to determine the judgment's scope and effect. [Citations.] The court may also " 'refer to the circumstances surrounding the making of the order or judgment, [and] to the condition of the cause in which it was entered.' " ' " (*In re Marriage of Rose & Richardson* (2002) 102 Cal.App.4th 941, 948–949.) "In the absence of ambiguity" in a judgment, "we conduct de novo review" of its provisions. (*Id*. at p. 949.)

We review the 2019 judgment and 2020 stipulation and order according to principles of contract interpretation. "The ultimate construction placed on the contract might call for different standards of review. When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract. [Citations.] When the competent extrinsic evidence is in conflict, and thus requires resolution of credibility issues, any reasonable construction [following a trial] will be upheld if it is supported by substantial evidence." (*Iqbal v. Ziadeh* (2017) 10 Cal.App.5th 1, 8.)

2. Analysis

In the trial court, Eugene sought to set aside the education provision of the 2020 stipulation and order on the ground that Katia had failed to disclose her true income. He contended he had "trad[ed]" the provision terminating spousal support for agreeing to share daughter's education expenses. However, the trial court concluded it had "no way to analyze the spousal support termination" provision in the 2020 stipulation and order as it had not received testimony regarding "the marital standard of living," one of the statutory factors it was required to consider when setting spousal support. (See § 4320.)

16

Furthermore, it found that Eugene was "previously obligated to splitting the education expenses" by the 2019 judgment. The trial court concluded that Katia's failure to disclose her actual income was not a ground for setting aside the stipulation and order to share education costs.

In interpreting the 2019 judgment, the trial court explained that the language stated Eugene and Katia would be responsible for one-half of daughter's "educational costs" and the agreement contained no limiting language. The court observed that "[s]uch language is not standard in most agreements" and therefore it was "reasonable to interpret 'all educational costs' as inclusive of tuition." Turning to the factual circumstances surrounding the entry of the 2019 judgment, the court found Eugene and Katia had looked at "several private schools" for daughter, had filled out applications and selected the school at which she was now enrolled, and had paid a deposit to ensure daughter's place in the private school. The court furthermore found that Eugene did not unenroll daughter from private school, had not provided evidence that he attempted to do so or asked Katia to do so, and "[a]t the time the parties agreed to split 'all educational costs' [daughter] was enrolled in private school."

Eugene has not demonstrated that the trial court erred in its interpretation of the 2019 judgment. To the extent that Eugene's challenge involves the trial court's resolution of disputed factual issues based on the trial testimony, we cannot meaningfully review those conclusions. We do not have a complete record of the arguments or evidence before the trial court on the motions and requests forming the basis for this appeal. From the record before us, we perceive no error with respect to the underlying factual findings and to the interpretation of the 2019 judgment in the trial court's ruling.

For example, the 2019 judgment does not limit educational costs in any manner but rather extends to "all" educational costs. What is more, the trial court found that at the time of the negotiations of that judgment, daughter was already enrolled in private

17

school. Nothing in the record before us demonstrates that these findings lack substantial evidence.

Eugene emphasizes on appeal that the 2020 stipulation and order specified private school tuition whereas the judgment only generally referred to educational costs. However, a plain reading of the stipulation and order supports the trial court's interpretation of the 2019 judgment. The stipulation and order states that daughter would "continue" attending private school and Eugene would reimburse Katia for the tuition she had already paid for that tuition.

Additionally, Eugene argues that even if he was already obligated under the judgment to pay for daughter's private school tuition, the trial court abused its discretion in "failing to find that [Eugene] would have materially benefited" from his request to set aside the 2020 stipulation and order based on Katia's "fraudulent concealment of her true income." Although Eugene's argument on this point is not entirely clear, he appears to assert that the trial court erred in not setting aside the 2020 stipulation and order, because he would have not agreed to the education provision had he known Katia's true income. To the extent that this argument involves credibility determinations made by the trial court, we may not revisit those assessments on appeal. (See *In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1175.)

Generally, as the party moving for relief under section 2122, Eugene bore the burden of proving his entitlement to relief. (See *In re Marriage of Kieturakis* (2006) 138 Cal.App.4th 56, 88–89.) We perceive no error in the trial court's conclusion that he failed to meet that burden based on the language of the 2019 judgment and in its factual finding that he had already agreed to pay for daughter's tuition before the 2020 stipulation and order.

C. *Order Dividing Google Stocks*

Eugene contends the trial court's determination that the Google stocks were an omitted asset subject to division should be reversed. He argues the Google stocks were

not an omitted asset because he had disclosed the Schwab "equity awards account" containing the Google stocks and the value of that account in an e-mail to Katia dated April 8, 2019, and the asset was "litigated and divided" in the 2019 judgment. He also states that his schedule of assets and debts listed the "combined value of both his Schwab investment account #6350 and Schwab Google stock account." He furthermore asserts the trial court's division of that asset was unequal because, although he agrees that she did not receive any Google stock prior to the trial court's 2022 order, he had already paid to Katia "one-half the value of the Google stock" in "June and July 2019" so the award of the Google stocks was actually a "windfall" to Katia.

### 1. Legal Principles

Section 2556 provides "In a proceeding for dissolution of marriage . . . the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding. A party may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community estate asset or liability omitted or not adjudicated by the judgment. In these cases, the court shall equally divide the omitted or unadjudicated community estate asset or liability, unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset or liability."

"Section 2556 applies even when former spouses were aware of the community property at the time the dissolution judgment was entered." (*In re Marriage of Huntley* (2017) 10 Cal.App.5th 1053, 1060.) "The mere mention of an asset in the judgment is not controlling. [Citation.] '[T]he crucial question is whether the benefits were actually litigated and divided in the previous proceeding.' " (*In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492, 501 (*Thorne & Raccina*).)

19

2.  Analysis

We review de novo the terms of the 2019 judgment, including whether it included the Google stocks.  (See *Thorne & Raccina*, *supra*, 203 Cal.App.4th at p. 501.)

Based on the record on appeal, Eugene has not demonstrated that the trial court's conclusion the Google stocks are an omitted asset lacks substantial evidence.

The judgment is silent as to the Google stocks or the Schwab GOOG account that contained them.  The language of the judgment itself does not support Eugene's conclusory claim that the question of dividing the Google stocks was actually litigated.  Eugene principally argues that the stocks were not omitted and subject to section 2556 because he had told Katia about the Google stocks and their location in e-mail communications.  However, he provides no authority supporting his contention that this e-mail amounts to the Google stocks having been "actually litigated and divided."

To the contrary, the authority Eugene cites undermines his position.  Courts have held that the "mere mention of an asset in the judgment is not controlling" and an asset may still be omitted even if it was mentioned.  (*Thorne & Raccina*, *supra*, 203 Cal.App.4th at p. 501.)  The critical question is whether the asset was actually litigated and divided.  (*Ibid.*)  Neither the 2019 stipulated judgment nor the 2020 stipulation and order mentions the Google stocks, and nothing in the record supports Eugene's contention that they were actually litigated and divided.  Thus, we uphold the trial court's determination under section 2556 that the Google stocks were not adjudicated in the judgment and thus are an omitted asset.

Eugene argues that even if the Google stocks are an omitted asset, the trial court abused its discretion in equally dividing the stocks.  He contends there was good cause to require an unequal division of the asset because he had previously given Katia equivalent value for the Google stocks.  The trial court did not address the applicability of the "good cause" exception in its otherwise detailed order.

20

Section 2550 provides, "Except upon the written agreement of the parties, or on oral stipulation of the parties in open court, or as otherwise provided in this division, in a proceeding for dissolution of marriage or for legal separation of the parties, the court shall, either in its judgment of dissolution of the marriage, in its judgment of legal separation of the parties, or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community estate of the parties equally." Moreover, fault may not be a consideration in the division of community property. (See *Diosdado v. Diosdado* (2002) 97 Cal.App.4th 470, 474.) Here, the judgment provides for equal division of community assets.

As described above, Eugene's exhibits to his declaration opposing Katia's motion for determination and division of the Google stocks support his contention that the full value of both Schwab accounts was included in the numbers from which Katia and Eugene determined the total value of the community property. While the trial court correctly observed that Eugene "may not unliterally decide which assets he keeps or awards to Katia in violation of the November 18, 2019 Judgment," it did not address Eugene's argument that, under sections 2550 and 2556, good cause (based on an unequal division of other assets) supported a finding that the Google stocks should not be divided equally.

"A trial court's failure to exercise discretion is itself an abuse of discretion." (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 515.) We decide that, on the facts here, the trial court abused its discretion in failing to decide this issue.

We will therefore remand the matter to the court to determine whether and to what extent sections 2556 and 2550 support a finding that the interests of justice require an unequal division of the Google stock. We do not intend, by anything we have said in this opinion, to suggest that the court should exercise its discretion in a particular manner with respect to division of the Google stocks. We leave to the trial court whether it may

21

make its determination based on the existing record or whether it should consider additional evidence.

D. *Orders Related to Sanctions*

Eugene contends the trial court erred by imposing sanctions on him while denying his request to sanction Katia. We focus, as do the parties, on section 271, the principal statutory provision discussed and applied by the trial court in its April 2022 order.

1.      Legal Principles

By its terms, section 271 promotes "the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (§ 271, subd. (a).) A sanction under section 271 is limited to "an award of attorney's fees and costs" and considers both the conduct of the parties in furthering or frustrating the policy of the law as well as the parties' incomes, assets, and liabilities and whether imposing a sanction would create an unreasonable financial burden on the subject. (*Ibid.*)

Section 271 is "designed to punish 'a party [who] has unreasonably increased the cost of litigation.' " (*In re Marriage of Blake & Langer* (2022) 85 Cal.App.5th 300, 310.) "[A] party requesting a Family Code section 271 award is not required to show any financial need for the award or any actual injury. [Citation.] The only stricture is that the sanction may not impose an unreasonable financial burden on the party sanctioned." (*Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 990 (*Falcone & Fyke II*).)

"Sanctions under section 271 are appropriate whenever a party's dilatory and uncooperative conduct has frustrated the policy of promoting settlement of litigation and cooperation among litigants. [Citation.] There is no requirement that a party suffer any actual injury as a prerequisite to requesting an award of attorney fees as sanctions under section 271." (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1317.) "Section 271 does not require that the sanctioned conduct be frivolous or taken solely for the purpose of delay. Rather, the statute is aimed at conduct that frustrates settlement of

22

family law litigation. Expressed another way, section 271 vests family law courts with an additional means with which to enforce this state's public policy of promoting settlement of family law litigation, while reducing its costs through mutual cooperation of clients and their counsel. 'Thus, a party who individually, or by counsel, engages in conduct frustrating or obstructing the public policy is thereby exposed to liability for the adverse party's costs and attorney fees such conduct generates.' " (*Id*. at p. 1318.)

We review an order imposing sanctions under section 271 for abuse of discretion. (*Falcone & Fyke II*, *supra*, 203 Cal.App.4th at p. 995.) " 'Accordingly, we will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order.' " (*Ibid*.) " ' "We review any findings of fact that formed the basis for the award of sanctions under a substantial evidence standard of review." ' " (*Ibid.*)

"In reviewing factual determinations for substantial evidence, a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' [Citation.] The determinations should 'be upheld if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence.' [Citations.] Uncontradicted testimony rejected by the trial court ' "cannot be credited on appeal unless, in view of the whole record, it is clear, positive, and of such a nature that it cannot rationally be disbelieved." ' " (*In re Caden C*. (2021) 11 Cal.5th 614, 640.)

2. Analysis

We discern no abuse of discretion in the trial court's decision to penalize Eugene for conduct that it found undermined the policy of promoting settlement of family law litigation. The trial court provided in both its statement of decision and subsequent April 2022 findings and order after hearing a detailed summary of the conduct Eugene had engaged in during the litigation which it concluded had frustrated settlement, including refusing to abide by court orders and thwarting settlement negotiations. "[S]anctions

23

under section 271 are justified when a party has unreasonably increased the cost of litigation." (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1227.) Eugene's conduct—as detailed in the court's written findings and conclusions—meets that standard.

On appeal, Eugene essentially reargues the facts favorable to his position while ignoring unfavorable findings made by the trial court. Our task, however, is limited to determining whether substantial evidence supports the trial court's ruling. Further, "[a]n appellate court ' "must *presume* that the record contains evidence to support every finding of fact . . . ." ' [Citations.] . . . It is the appellant's burden, not the court's, to identify and establish deficiencies in the evidence." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409; see also *In re Marriage of Higinbotham* (1988) 203 Cal.App.3d 322, 328–329 [observing "the daunting burden placed on one who challenges the sufficiency of the evidence to support a trial court finding"].)

Eugene has not carried his burden of showing the trial court's decision to impose sanctions under section 271 lacks substantial evidence or that the court otherwise abused its discretion. (See *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 292.)

Turning to the amount of sanctions, Eugene argues the award of $60,000 was excessive and untethered to the attorney fees and costs incurred by Katia. We disagree.

Eugene relies on *Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, but that decision does not address similar circumstances. The appellate court in *Sagonowsky* reversed a sanctions award of $680,000 under section 271 as excessive because there was no dispute that those amounts did not relate to attorney fees or costs and "sanctions available under [section 271] are limited to 'attorney fees and costs.' " (*Sagonowsky*, at p. 1153.) It concluded that "the plain language of section 271 did not authorize the court to award $500,000 to punish" a party or $180,000 for the reduction in the sales price of a property, because those amounts were unrelated to attorney fees and costs borne by the other party. (*Id*. at p. 1156.)

The record does not reflect the trial court made an award that was untethered to attorney fees and costs. Katia sought over $100,000 in attorney fees and costs, and a detailed declaration from her counsel supported the requested fees and costs (see pt. I.C. & fn. 8, *ante*). The amount the trial court awarded was substantially less than the figure Katia requested.

Eugene argues that the trial court should have sanctioned Katia. The record does not reflect the trial court's reasoning or explanation for why it declined to do so, although it acknowledged that Eugene sought an award of attorney fees. Absent a transcript of the arguments or evidence considered at trial, we must presume there was evidence to support the implied finding that Katia had not frustrated settlement in the family law proceedings or otherwise engaged in sanctionable conduct leading up to the trial court's order in this appeal. (See *Fain*, *supra*, 75 Cal.App.4th at p. 992.)

Eugene's contentions reflect his frustration and dissatisfaction with the trial court's denial of his request for sanctions, but they do not establish reversible error under the principles of appellate review. The trial court found that Katia had not disclosed her true income during the time the 2020 stipulation was being negotiated and, due to that finding, modified the child support calculation. Eugene argues that her lack of disclosure of her true income during their negotiations and her other litigation conduct warranted substantial sanctions. The trial court did not find Katia had frustrated settlement, and the record before us does not disclose that that conclusion lacks substantial evidence. Moreover, Eugene fails to summarize other evidence in the record supporting the trial court's implied finding that sanctions were not warranted against Katia, such as the declaration provided by Katia's attorney that Katia had attempted to settle in good faith the litigation at a number of junctures.[13]

---

[13] Eugene does not contend the trial court's order violated section 2107, subdivision (c), and therefore he has forfeited any claim of error as to that provision.

### III. DISPOSITION

The April 8, 2022 orders after hearing on the request to vacate the April 21, 2020 stipulation and for sanctions are affirmed.  The April 8, 2022 order after hearing on determination and division of the Google stock is reversed.  The matter is remanded for the limited purpose of a determination by the trial court whether the interests of justice require an unequal division of the Google stock.  (Fam. Code, § 2556.)  The trial court's determination that the Google stock is an omitted asset is affirmed.  (*Ibid*.)  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

_____
                       Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P.J.

_____
Wilson, J.

**H050115**
***Strulyov v. Strulyov***